## MISSOURI COMMERCIAL INVESTMENT COMPANY, Respondent,

v.

## EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant.

### No. 45382.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 30, 1984.

Evans & Dixon by Ralph C. Kleinschmidt, Gerre S. Langton, St. Louis, for appellant.

Frank A. Conard, St. Charles, for respondent.

SATZ, Judge.

Plaintiff, Missouri Commercial Investment Company, sued defendant, Employers Mutual Casualty Company, for breach of a builder's all-risk insurance policy, following the collapse of wooden trusses for the roof of a building plaintiff was constructing.[1] After a jury verdict for plaintiff, judgment was entered against defendant for $28,-333.50. Defendant appeals. We affirm.

Plaintiff began building a shopping center in St. Charles County and contracted with Earl Banze Construction Company (Banze Company) for the carpentry work. The Banze Company had just erected wooden trusses for the roof of one of the buildings and had started to put on the exterior plywood sheathing when about two-thirds of the trusses collapsed. Accounting for the collapse was one of the principal issues at trial. There was evidence that the wind that day, gusting up to 23 miles per hour, may have been a contributing factor.

---

1. Plaintiff's petition was in two counts, one against the defendant insurer on the policy, and the other against the contractor for negligent carpentry work. Both counts were submitted to the jury, which found for the contractor and against the defendant insurer. The contractor is not a party to this appeal.

There was also evidence that inadequately braced trusses may have caused the collapse. This latter evidence would support defendant's denial of plaintiff's claim under the policy's "Exclusion D", which excluded from coverage any "loss caused or resulting from error, omission or deficiency in design, specifications, workmanship or materials."

■ On appeal, defendant contends that plaintiff did not introduce the policy or binder into evidence and, therefore, defendant argues, plaintiff failed to prove the extent and terms of coverage and "a loss through or on account of the cause insured against." Although defendant raised the issue of submissibility in its motions for a directed verdict at the close of plaintiff's case and at the close of the entire case, it did so in general language. Defendant did not raise the precise and specific issue of plaintiff's failure to introduce the policy and binder.[2] Nonetheless, we will consider the issue of submissibility under the doctrine of plain error. *See, e.g., Misch v. C.B. Contracting Co.,* 394 S.W.2d 98, 100 (Mo. App.1965).

■ To have made a submissible case, plaintiff here must have proved the "issuance of the policy of insurance, delivery, payment of the premium, the loss through or on account of the cause insured against, and the furnishing of notice and proofs to the insurer as required by the policy." *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.,* 558 S.W.2d 255, 259 (Mo.App. 1977). Focusing on the fourth element, we view the evidence in the light most favorable to the insured. *E.g., Stogsdill v. General American Life Ins. Co.,* 541 S.W.2d 696, 698 (Mo.App.1976). We conclude the

jury reasonably could have found that: plaintiff had purchased from defendant a "Special Builder's Risk" policy for the amount of the value of the completed building; this policy was in effect on the day the trusses collapsed; the policy was an "all-risk policy" with one exclusion for faulty design, workmanship or materials;[3] and, according to the insurance agent who sold it and one of plaintiff's co-owners who bought it, the policy was "the broadest form available" that had "everything covered that you can think of," including earthquake coverage.

■ Testimony concerning the type of policy, the extent of coverage, the date the policy went into effect and the identity of the insurer was further corroborated by the insurance binder. Although not formally introduced into evidence, the binder was marked, identified and referred to at trial. Consequently, the binder was in evidence just as if it had been formally introduced. *See Wilkins v. Cash Register Service Co.,* 518 S.W.2d 736, 751 (Mo.App. 1975); *Nutz v. Shepherd,* 490 S.W.2d 366, 371 (Mo.App.1973); *Bolhofner v. Jones,* 482 S.W.2d 80, 85 (Mo.App.1972).

■ The risk of trusses collapsing is literally within "all-risk" coverage. Moreover, inferring that "all-risk" coverage extends to the resulting loss comports with the general understanding of all-risk insurance that "recovery under an 'all-risk' policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." 13A G. Couch, *Cyclopedia of Insurance Law* § 48:141 at 139 (R. Anderson 2d ed. 1982). *See also:* Annot.,

---

**2.** Defendant's motions for directed verdicts were identical. Each reads:

"1. Plaintiff has failed to prove by competent and substantial evidence that it suffered a loss through or on a count of a cause insured against under the insurance policy in effect.

2. Plaintiff has failed to prove by competent and substantial evidence that this defendant breached the contract of insurance.

3. Plaintiff's own evidence affirmatively shows that the truss collapse was the result of error, ommission, or deficiency in design,

specifications, workmanship and materials and therefore is excluded under said policy under conclusion d.

4. Plaintiff's evidence fails to prove any violation of the terms and conditions of the policy of insurances by this defendant."

**3.** Defense counsel himself suggested that Exclusion D of the policy be read into evidence during cross-examination of defendant's claim representative.

88 A.L.R.2d 1122, 1125 (1963). Admittedly, the evidence of coverage at trial was not the best evidence and was at times conclusional. But the secondary evidence was admitted without objection and was sufficient, if believed, to establish that the loss was from a "cause insured against." *See, e.g., Annin v. Bi-State Development Agency*, 657 S.W.2d 382, 384 (Mo.App. 1983); *Cunningham v. Brown*, 93 S.W.2d 1094, 1095 (Mo.App.1936). This point is denied.

Defendant also contends the trial court abused its discretion in denying defendant's motion in limine and in overruling defendant's subsequent related objections during trial. By its motion and objections, defendant sought to prevent introduction into evidence of or any reference to certain statements allegedly made by defendant's adjuster, Frank Yung. Yung allegedly stated to one of plaintiff's co-owners that (1) the loss was covered and clean-up could begin, and (2) if the co-owner told defendant the wind caused the loss, there would be coverage. Defendant argues that Yung's alleged statements were irrelevant and served only to prejudice the jury against defendant. We disagree.

The first reference to Yung's statements occurred in plaintiff's and co-defendant Banze Company's opening statements. In a motion in limine, defendant requested the Court to prohibit any reference in opening statements to Yung's alleged statements that the loss was covered by the policy. The court denied the motion, but specifically reserved ruling on the question insofar as the rest of the trial was concerned. Plaintiff's counsel, in his opening statement, told the jury the evidence would show that defendant sent Yung to the scene within hours of the incident, and Yung told one of plaintiff's co-owners the loss was covered. Co-defendant's counsel, in turn, told the jury that Yung told one of plaintiff's co-owners the damage was covered and plaintiff could go ahead and clean up.

■■■ The primary purpose of an opening statement is to acquaint the judge and jury with the nature of the case in order to enable them to understand the case and to appreciate the significance of the evidence. *Hays v. Missouri Pac. R.R.*, 304 S.W.2d 800, 804 (Mo.1957); *State v. Fenix*, 311 S.W.2d 61, 65 (Mo.App.1958). Counsel's remarks are not evidence of the facts asserted. *Hardwick v. Kansas City Gas Co.*, 352 Mo. 986, 180 S.W.2d 670, 673 (1944). Consequently, counsel is permitted considerable latitude in making his opening statement, subject to the sound discretion of the trial court. *Tyler v. Kansas City Public Service Co.*, 256 S.W.2d 563, 565 (Mo.App.1953). Only if this discretion is abused to the prejudice of the party complaining will we overturn the trial court's ruling. *Id.* at 565. We find no such abuse here.

■■■ If during trial either plaintiff or co-defendant Banze Company established that Yung was an agent of defendant whose statements could bind defendant, then either plaintiff or co-defendant Banze Company could use Yung's statements as an admission that the cause of the loss was not a cause excluded by Exclusion D of the policy. *See, e.g., Boyle v. Colonial Life Ins. Co.*, 525 S.W.2d 811, 818 (Mo.App. 1975); *Baker v. St. Paul Fire & Marine Ins. Co.*, 427 S.W.2d 281, 286 (Mo.App. 1968). The references in opening statement, thus, were proper, and the trial court's denial of defendant's motion in limine was likewise proper, particularly since the jury was instructed that counsel's opening statements should not be considered as evidence. *See State ex rel. State Highway Comm. v. Henderson*, 381 S.W.2d 10, 12 (Mo.App.1964).

Defendant argues the only logical relevant use of these statements is to create contractual terms of coverage by estoppel, which is contrary to law. *See, e.g., Martinelli v. Security Ins. Co.*, 490 S.W.2d 427, 434 (Mo.App.1972). Defendant's argument is misdirected and, thus, misses the mark. The terms and extent of the policy could be and were proved by other evidence. As noted, the statements in issue could be relevant as an admission of defendant,

through its agent, that the loss was covered by the terms of the policy as otherwise proved.

The next instance of which defendant complains occurred during the examination of Yung by counsel for co-defendant Banze Company. Co-defendant's counsel asked Yung if he told plaintiff's owners that the loss was covered and that they could begin cleaning up the site. Defendant's counsel objected, but the court overruled the objection. Yung answered that he did not tell plaintiff's owners that the loss was covered but admitted that he did tell them that they could clean up. Since Yung denied making the statement defendant complains about, we fail to see what prejudice was worked against defendant by Yung admitting he told plaintiff's owners they could clean up.

The last instance defendant complains about arose during the cross-examination of one of plaintiff's owners by counsel for co-defendant Banze Company. Co-defendant's counsel asked this witness if Yung told him to say that the wind caused the accident. The court overruled defendant's objection on the ground that this question related to causation.

■■■■ We need not and do not consider the propriety of the court's ruling. The trial court is granted broad discretion in admitting or rejecting evidence on relevancy grounds. *Moreland v. State Farm Fire & Cas. Co.*, 662 S.W.2d 556, 565 (Mo. App.1983). But even if the court's ruling were incorrect, the answers given to the questions asked worked no prejudice against defendant. At best, the answers

merely showed that Yung was not a loyal employee of defendant.[4]

■■■■ Defendant next assigns error to the use of the phrase "loss due to all builder's risks" in plaintiff's verdict director patterned on MAI 31.09.[5] Specifically, defendant argues this phrase is jargon which must be defined for the jury. The failure to define the phrase, defendant contends, "furnishes wholly inadequate confusing and misleading guidelines for the jury."

Defendant made no objection to the phrase either during trial or in its motion for a new trial. Defendant's assertion of error in its motion for a new trial was that "the instruction furnishes wholly inadequate confusing and misleading guidelines for the jury." This general and vague statement falls far short of the requirement that assertions of error "[be] presented to the trial court with a degree of specificity and definiteness to sufficiently apprise the court of the particular acts or rules alleged to be erroneous." *Stogsdill v. General American Life Ins. Co., supra* at 700. Furthermore, the words "all" and "risks" are simple monosyllabic words whose meanings, when used either separately or together, are not so esoteric or arcane that written definitions must be given them. Their meanings are well within the ken of a jury. *See, e.g., Huff v. Union Electric Co.*, 598 S.W.2d 503, 510 (Mo.App. 1980).

■■■■ Defendant also contends plaintiff's own evidence established "as a matter of law" that the loss was within those excluded from coverage under "Exclusion D" of

---

4. The examination defendant complains about reads:

"Q. Did he [Mr. Yung] ever tell you to say that it was the wind that caused this accident?
A. He told me that the fastest way Employers would pay off would be for me to say it was the wind.
Q. Did he also tell you to round up these carpenters and tell them to say it was the wind?
A. He told me that I was to call him before he made a formal recording of them and say that the wind could have caused it."

5. The instruction reads:

"Your verdict must be for plaintiff on plaintiff's claim for damages against Defendant Employers Mutual Casualty Company if you believe:

First, defendant issued its policy to plaintiff on Charleston Square covering loss due to all builder's risks, and

Second, such property was damaged, and
Third, the policy was in force on the date of such loss.

unless you believe plaintiff is not entitled to recover by reason of Instruction Number 9."

the policy. Therefore, defendant reasons, the trial court erred in submitting the case to the jury. We disagree.

The evidence to which defendant alludes is the testimony of an expert witness who, testifying during the plaintiff's case in chief, stated that the trusses collapsed because they were not properly braced. Defendant overlooks, however, other evidence introduced during plaintiff's case in chief which, if believed, repudiates the expert's testimony and would fix the cause of the collapse on the wind that day. The expert's testimony established nothing "as a matter of law"; rather, it offered one explanation among others for the cause of plaintiff's loss, and the competing explanations were properly submitted for resolution by the jury.

Defendant complains about the discovery of and the use at trial of a claim report which, among other things, stated: "[t]herefore, we should consider wind as having been a contributory cause of the collapse." On appeal, defendant argues the report "was protected under attorney-client privilege and/or that the report was opinion work product ...."

Defendant has not preserved this issue for review. The motion for a new trial makes no mention of any statement in the "claim report", and there is no mention of *anything* being protected under the attorney-client privilege or as "opinion work product." This issue, therefore, is not properly before us. *See, e.g., Stogsdill v. General American Life Ins. Co., supra* at 700.

Alternatively, defendant requests us to consider this issue under the doctrine of plain error. We have done so. However, we find no "manifest injustice or miscarriage of justice" resulted from the use of the claim report. Rule 84.13.

Judgment affirmed.

SIMON, P.J., and STEPHAN, J., concur.