**EAGLE STAR INSURANCE COMPANY OF AMERICA**, Appellant,

v.

**FAMILY FUN, INC.**, et al., Respondents.

No. WD 40803.

Missouri Court of Appeals, Western District.

April 11, 1989.

R. Max Humphreys, Jefferson City, for appellant.

William Icenogle, Camdenton, for respondents.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is a declaratory judgment suit brought by the appellant Eagle Star Insurance Company of America (Eagle Star) with regard to a contract of insurance it had with the respondent, Eagle Star's insured, Family Fun, Inc. (Family Fun). The "described premises" is located on Highway 54 South near the Lake of the Ozarks. The policy listed the business and occupancy of the insured as "Office and Liquor Store." Family Fun bought the fire and liability policy from Naught Naught Insurance Company, (Naught Naught), Eagle Star's agent. The policy was for $300,000, the premium paid was $925. Family Fun procured the insurance in order to get an SBA loan. Gary Maher of Naught Naught initially inspected the premises, found a commercial water slide and was successful in getting Family Fun to remove the slide.

The policy in question was for a year and issued on January 16, 1984. Sometime in March Maher discovered a go-cart track on the property. The policy made no mention of a go-cart track. Naught Naught, on behalf of Eagle Star, on April 9, 1984 wrote to Family Fun and enclosed an endorsement to amend the policy as of March 1, 1984 to exclude from the policy the go-cart risk. Family Fun ignored the memo, and refused to ever sign the endorsement to amend the policy. On July 22, 1984 Stacie Smith was injured on the track, and a day later Buffy Zajac was hurt. The question is whether Eagle Star's policy covered those two suits. Eagle Star never cancelled nor returned any of the premium on the policy.

The trial court concluded that the contract of insurance covered the go-cart track. The court decided that there was a valid contract, which was "clear and without ambiguity on its face." While this court agrees that there was a valid contract, it does believe there was an ambiguity, which is resolved in favor of the insured. This court will sustain the trial court's judgment even though it is based on an incorrect theory. *Ludwig v. Ludwig,* 693 S.W.2d 816, 819 (Mo.App.1985).

The function of this court is to interpret and enforce an insurance contract as written; not to rewrite the contract. *Brugioni v. Maryland Casualty Co.,* 382 S.W.2d 707 (Mo.1964). "The court cannot construe the policy to afford coverage where it does not exist, and words must be given their plain and ordinary meaning." *Protective Cas. Ins. Co. v. Cook,* 734 S.W.2d 898, 905 (Mo. App.1987) (*citing American Ins. Co. v. First Nat. Bank in St. Louis,* 409 F.2d 1387, 1390 (8th Cir.1969)). "The rules of construction applicable to insurance contracts require that the language used be given its plain meaning and if the language is unambiguous the policy must be enforced according to such language." *Briggs v. State Farm Fire and Cas. Co.,* 680 S.W.2d 444, 445 (Mo.App.1984) (*citing Robin v. Blue Cross Hospital Service, Inc.,* 637 S.W.2d 695, 698 (Mo. banc 1982); *McGarrah v. Stockton,* 425 S.W.2d 223 (Mo.App.1968). *But see, Estrin Const. Co., Inc. v. Aetna Cas. & Sur.,* 612 S.W.2d 413 (Mo.App.1981) (beseeches Missouri courts to do away with the unambiguous/ambiguous distinction when exam-

ining contracts of adhesion—instead courts should look to the reasonable expectations of the adherent).

Whether a contract is ambiguous, is a question of law. *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973).

The policy here was basically in two parts, liability and fire. The *liability* portion listed the location of the premises and the business of the insured and occupancy as an office building liquor store, but it does not state that any other uses or businesses would not be covered. The fire portion of the contract declares that Eagle Star would "not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured." Yet, while that clause speaks to "any loss" it is found only in a fire endorsement addendum. Read as a whole, the contract could be construed as to cover new and unnamed uses for liability, but specifically exclude new fire hazards, or as Eagle Star asserts, to require an endorsement for any new business for either liability or fire coverage. The language in the fire portion could have just as easily been put in the liability portion by the company which drew the contract.

Ambiguities are resolved in favor of the insured. *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810 (Mo. banc 1985). "The principle that an ambiguous adhesion provision shall be given an intendment favorable to the adherent rests on the public policy that the inept drafter of a form had the resources to do better ... The principle that an ambiguous adhesion provision shall be open to interpretation by evidence as well as by the written words rests on the role of the law to protect the reasonable expectations of the parties induced by the agreement." *Estrin*, 612 S.W.2d at 419 (citations omitted).

"Where the parties' impart different meaning to a contract's terms, the courts allow extrinsic evidence to determine the true meaning." *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799, 805

(Mo.App.1987). In this case, Family Fun was a close corporation with a husband and wife as the two shareholders. One of the shareholders testified that he obtained liability insurance in response to a requirement of the Small Business Administration prior to it making a loan to Family Fun. The loan, which he said he informed Eagle Star about, was for the construction of the go-cart track. The trial court made reference to this fact in its findings. Moreover, after the insurance company discovered the go-cart track, it continued to provide coverage—it made no attempt to cancel the policy. The insurance contract in question is construed, under these peculiar facts to cover the go-cart track and was in effect when Smith and Zajac sustained their injuries. The Businessowners Standard Form Fire Policy endorsement related only to the fire insurance part of that policy. This conclusion that the un-amended policy in question covered the go-cart is supported by the admission of one of Eagle Star's agents. Richard Naught, a branch office underwriter for Eagle Star, stated that but for the exclusion endorsement the go-cart track would have been covered under the standard form Comprehensive Business Liability policy. If Eagle Star's policy implicitly rejected the go-cart use, it is unexplained why it insisted on an amendment to exclude coverage. This coupled with the binding admission of its agent makes the Eagle Star theory on appeal implausible.

In *Mo. Commercial Inv. v. Employers Mut. Cas.*, 680 S.W.2d 397, 401 (Mo.App. 1984), the court was confronted by a situation where an agent of an insurance company made a statement that the cause of a loss was not a cause excluded by the policy. In that context, the court wrote:

"If during trial either plaintiff or co-defendant ... established that Yung [the person who made the statement] was an agent of defendant [insurance company] who could bind defendant, then either plaintiff or co-defendant ... could use Yung's statement as an admission ... The terms and extent of the policy could be and were proved by other evidence. As noted, the statement in issue could be

relevant as an admission of defendant through its agent, that the loss was covered by the terms of the policy as otherwise proved."

*Id.* at 401–2.

Given this conclusion, there is no reason to entertain Eagle Star's contention that the trial court improperly created coverage by estoppel, as denounced in *Locke Distributing Co. v. Hartford Acc. & Indem. Co.,* 407 S.W.2d 658 (Mo.App.1966).

The judgment is affirmed.