AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff-Appellant,

v.

R & S MEATS, INC., Defendant-Respondent.

Court of Appeals

*No. 94–0055. Submitted on briefs October 17, 1994.—Decided December 14, 1994.*

(Also reported in 526 N.W.2d 791.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Jeffrey A. Schmeckpeper* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joseph J. Muratore, Sr.* and *Joseph J. Muratore, Jr.* of *Law Offices, Joseph J. Muratore, S.C.* of Racine.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   This is a declaratory judgment case involving an insurance policy. American Motorists Insurance Company appeals from a judgment in favor of its insured, R & S Meats, Inc. The judgment declared that American Motorists' policy covered damage to R & S's property under a commercial property coverage policy. American Motorists argues that R & S's loss was excluded under various provisions of the policy. Even if there is coverage, American Motorists argues that the judgment improperly awards twelve percent interest on R & S's double costs pursuant to the offer of settlement statute, § 807.01, STATS.

We affirm the trial court's declaratory rulings regarding coverage. We reverse the court's award of twelve percent interest on R & S's double costs award.

## FACTS

The facts relevant to the appellate issues are undisputed. R & S is a full service food operation that provides meat and other food products to institutional, commercial and retail establishments. To process the meat it provides, R & S uses a blast freezer room which measures twenty by thirty feet and is ten feet high. The freezer room has two pillars which support the ceiling beam. During normal operation times, the blast freezer temperature is ten to thirty degrees below zero Fahrenheit. However, the temperature can reach as low as forty degrees below zero.

On the morning of September 9, 1991, after heavy rains, Jack Levonian, the owner of R & S, arrived at the R & S building and found a large amount of water accumulated outside the building in the loading dock area. Upon entering the building, Levonian went to the blast freezer room and discovered that the freezer floor had heaved, the ceiling beam was bent, the pillars supporting the ceiling beam had risen, and two walls had pulled away from the ceiling wall. As a result, refrigeration had escaped from the freezer unit.

An ensuing investigation revealed that the accumulation of water in the loading dock area was due to the city of Racine's failure to connect the sewer lateral running from the catch basin in the loading dock area of R & S's building to the storm sewer. Further investigation revealed that the blast freezer floor heaved after the accumulated water flowed underneath the floor of the freezer room and froze, causing the resultant damage.

199

Based on this investigation, R & S filed a claim for recovery of its loss under its commercial property coverage policy issued by American Motorists. Relying on various exclusions set out in the policy, American Motorists rejected R & S's claim. Seeking judicial confirmation of its rejection, American Motorists commenced this declaratory judgment action. R & S responded with a counterclaim seeking a declaratory judgment in its favor.

In due course, R & S served American Motorists with an offer of settlement pursuant to § 807.01(3), STATS. American Motorists rejected the offer of settlement and the matter proceeded to trial.

The parties and the trial court used a jury to resolve certain factual disputes which arose under American Motorists' exclusion defenses.[1] The jury determined that three events had caused the damage to R & S's property: (1) the backup of water from a sewer or drain at the loading dock; (2) faulty, inadequate or defective workmanship or construction related to the failure to connect the storm sewer lateral to the main sewer; and (3) faulty, inadequate or defective design of the blast freezer. The jury fixed R & S's damages in the amount of $61,442.61.

Based on the jury's findings, the trial court declared coverage for R & S's damages under both the expanded property form and the limited business income coverage form of American Motorists' policy. In

---

[1] Section 806.04(9), STATS., permits the use of a jury in a declaratory action proceeding:

> JURY TRIAL. When a proceeding under this section involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

the judgment, the court awarded R & S $61,442.61 in damages as determined by the jury. Relying on the offer of settlement statute, the court also awarded R & S double costs in the amount of $1767.60 plus interest on the damages and the double costs. American Motorists appeals the court's coverage rulings and the interest award on the double costs.

## A. COVERAGE AND EXCLUSIONS

Before we begin our analysis of the appellate issues, we address the manner in which the parties postured this case in the trial court. The dispute in this case was not whether R & S's loss was covered by American Motorists' general grant of coverage. Rather, the dispute in this case was whether the exclusions asserted by American Motorists served to bar coverage. We will discuss these various coverage, exclusion and exception provisions as we discuss each individual exclusion issue.

### 1. Standard of Review and Rules of Construction

■

We begin with our standard of review. American Motorists contends that R & S's loss was excluded under various policy exclusions. To resolve these claims, we must construe the policy. The construction of an insurance policy is a question of law. *Maas v. Ziegler,* 172 Wis. 2d 70, 79, 492 N.W.2d 621, 624 (1992). We review such a question independently and without deference to the ruling and reasoning of the trial court. *Id.* Nonetheless, we value the opinion of a trial court on such a question. *See Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

Next, we address some general principles regarding insurance contract construction. Parties are at liberty to enter into insurance contracts which specify the coverage afforded as long as the contract terms do not contravene state law or public policy. *Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 170, 395 N.W.2d 776, 778 (1986). Absent any stated legislative policy to the contrary, an insurance company's liability is based upon the contract between the parties and is governed by its terms and conditions. *Ehlers v. Johnson,* 164 Wis. 2d 560, 563, 476 N.W.2d 291, 293 (Ct. App. 1991). In the event of ambiguity, the language of a policy should be construed against the insurance company that drafted the policy. *Maas,* 172 Wis. 2d at 79, 492 N.W.2d at 624.

## 2. The Policy Generally

We generally describe the coverage and exclusion provisions which bear upon this case. The general grant of coverage in American Motorists' policy reads as follows:

### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Causes of Loss in accordance with the provisions of Section F., COVERED CAUSES OF LOSS.

. . ..

### F. COVERED CAUSES OF LOSS

We insure covered property against risks of direct physical loss or damage from external causes . . ..

202

The policy sets out various exclusions to this general grant of coverage. These exclusions include a loss resulting from a "flood," a "mudslide or mudflow," "earth movement" and certain instances of "[f]aulty, inadequate [or] defective: [d]esign . . . workmanship, repair, or construction . . .." These exclusions apply "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." The policy also provides certain exceptions to these exclusions which, if applicable, serve to reinstate coverage.

### 3. The "Flood" and "Mudslide or Mudflow" Exclusions

Section G.1.g. of the policy recites exclusions for a loss caused by a "flood." The exclusions read as follows:

1. We will not pay for loss or damage caused directly or indirectly by any of the following.

. . ..

**g. Flood**

1) Including surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

2) Mudslide or mudflow.

But if loss or damage by . . . water that backs up from a sewer or drain or sprinkler leakage results, we will pay for that resulting loss or damage.

As the concluding sentence of this excerpt states, the exclusion does not apply if the loss occurs from, inter alia, "water that backs up from a sewer." In the trial court, the parties disputed whether this exception applied to both subsecs. 1) and 2) of the flood exclusion

or only to the subsec. 2) "mudslide or mudflow" exclusion. American Motorists argued that the exception was limited to the "mudslide or mudflow" exclusion because it immediately follows that exclusion language. Since there was no dispute that a mudslide or mudflow had not occurred, American Motorists reasoned that the exception had no relevancy to this case.

R & S argued, however, that the exception was positioned in the policy such that a reasonable insured would understand the exception to apply to both exclusions. Thus, R & S argued that the court should submit a question to the jury asking whether the loss resulted from the water which backed up from the sewer. The trial court ruled that the exception applied to both exclusions. Thus, the court submitted a question asking, "Was the water that collected in the loading dock water that backed up from a sewer or drain?" The jury answered, "Yes."

On appeal, American Motorists renews its trial court argument that the trial court erred by submitting the exception question to the jury. However, American Motorists' appellate argument is broader than that made in the trial court. Before us, American Motorists argues at various points that not only was there no mudslide or mudflow, *but also that there was no flood.*[2] Accepting American Motorists' contention that neither

---

[2] For instance, American Motorists argues in its brief, "In finding coverage under the policy, the trial court relied upon an exception to a flood/mudslide exclusion. However, there was no flood, mudslide, or mudflow on R & S's property, thus rendering the exception to these exclusions immaterial." At another point, American Motorists argues:

It is apparent from reading the plain language of the policy that the precipitating cause must be a mudslide or mudflow which

exclusion applies, *it logically follows that coverage exists*. The exception to the exclusion becomes a pointless inquiry if the exclusion does not apply in the first instance. Thus, we need not look to whether the trial court properly explored whether the exception to the exclusion applied. Since neither exclusion applied, coverage exists.

### 4. The "Earth Movement" Exclusion

Section G.1.b. of American Motorists' policy recites an "earth movement" exclusion. It reads, in relevant part, as follows:

> (1)  Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence, or earth sinking, rising or shifting . . ..

The jury was not asked any question regarding this exclusion. Nor did the trial court directly address this exclusion in its declaratory ruling.[3] However,

did not occur in this case. . . . Since no mudslide or mudflow caused the sewer or drain to backup, there is no coverage.

Even if the court were to find the exception applicable to the flood exclusion, *there is no evidence that the backup was caused by a flood* . . ..

*The trial court was incorrect when it held that there was a "flood" which thus triggered the exception to the flood exclusion.* [Emphasis added.]

[3] The trial court did not answer this question because it had found coverage under another provision of the American Motorists policy. The court relied on the case law holding that when a policy expressly insures against a loss caused by one risk but excludes a loss caused by another risk, coverage is extended to the loss caused by the insured risk even though the excluded risk is a contributory cause. *See  Kraemer Bros., Inc. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857, 863-64 (1979); *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d 356, 360, 329 N.W.2d 243, 246 (Ct. App. 1982).

because the meaning of "earth movement" in the policy is one purely of law, and because the undisputed facts do not establish earth movement as we define the phrase, we conclude that the exclusion does not apply.

American Motorists asserts that the evidence "established that the damage to the freezer and the refrigeration equipment occurred as a result of movement of the earth due to the formation of ice beneath the blast freezer. Therefore, any damage to the freezer which resulted from the earth's rising or shifting is excluded from coverage."[4]

In *Wisconsin Builders, Inc. v. General Ins. Co. of America*, 65 Wis. 2d 91, 101, 221 N.W.2d 832, 837 (1974), the Wisconsin Supreme Court discussed the scope of the term "earth movement." At issue was the cause of the collapse of a building constructed at the foot of a bluff. *Id.* at 94-95, 221 N.W.2d at 833-34. The insurance policy excluded coverage for losses caused by "earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, [and like

---

As we will later explain, while the trial court correctly interpreted the case law, this case is different because the American Motorists policy has a provision that expressly disclaims coverage in such an "overlap" situation. Such a provision was not included in the policies discussed in the *Kraemer* or *Benke* cases. We will discuss the effect of this clause later.

[4] We summarily reject R & S's contention that this issue is waived because American Motorists did not raise it in the trial court. This issue was raised before the jury trial and, more importantly, at the motions after verdict when the trial court made its ultimate rulings on coverage. We also reject R & S's argument that the trial court either expressly or implicitly answered this factual question. It did not. Instead, the court believed that it did not have to address the question on the merits. *See supra note 3.*

this case] *earth sinking, earth rising or shifting." Id.* at 94, 221 N.W.2d at 834 (emphasis added).

The trial court in *Wisconsin Builders* had instructed the jury that " 'earth movement' means any movement of earth 'whether it be up, down or sideways.' " *Id.* at 99, 221 N.W.2d at 836. Based on this instruction, the jury answered that "earth movement" had occurred within the meaning of the exclusionary clause of the insurance policy. *Id.* at 93, 221 N.W.2d at 833.

In reversing, the Wisconsin Supreme Court quoted with approval from *Wyatt v. Northwestern Mut. Ins. Co.*, 304 F. Supp. 781, 783 (D.C. Minn. 1969):

> It seems hard to contend that the insurance policy meant to exclude all earth movements, for it is difficult to distinguish between a situation where a piece of heavy equipment breaks loose and hits a house causing serious damage and a situation where that equipment instead hits only an embankment next to a house but causes the earth to move and thereby damages the house. Certainly not all earth movements, or at least those where some human action causes such are included in the exclusion. If this interpretation creates an ambiguity in the language then it is necessary to decide what earth movements were intended to be covered.

*Wisconsin Builders*, 65 Wis. 2d at 102-03, 221 N.W.2d at 838.

In light of such ambiguity, the *Wisconsin Builders* court concluded that "[t]he Wisconsin law concerning the construction of insurance contracts is in accord with the law of those jurisdictions which have applied the *ejusdem generis* rule to the exclusionary clause in question." *Id.* at 103, 221 N.W.2d at 838. This doctrine limits the scope of "earth movement" to the same class

or nature of peril as those specifically described. *See id.* at 102, 221 N.W.2d at 837. As a result, the supreme court remanded the case for a new trial, directing the trial court to instruct the jury under the principles of *ejusdem generis. Id.* at 107, 221 N.W.2d at 840.

However, the supreme court's narrowing of the concept of "earth movement" in *Wisconsin Builders* does not entirely answer the question before us. This is because the American Motorists policy specifically includes "earth sinking, rising or shifting" as "earth movement." Thus, even under the doctrine of *ejusdem generis*, the loss here may not be covered if the evidence demonstrates such "sinking, rising or shifting" of the earth. American Motorists contends that the heaving of the blast freezer floor constitutes such an event.

However, we read the supreme court's language in *Wisconsin Builders* to say that if the earth movement is due to human action, coverage is not lost. "Certainly not all earth movements, *or at least those where some human action causes such are included in the exclusion.*" *Id.* at 103, 221 N.W.2d at 838 (emphasis added). That is what occurred here. The jury determined in answer to questions three and four of the special verdict that the loss was due, in part, to the city's failure to connect the storm sewer lateral to the storm sewer. This obviously was human error. Thus, we conclude that the earth movement exclusion does not apply to the facts of this case.

Our conclusion is reinforced by the ambiguity created by the policy provisions in this case. The general grant of coverage protects against loss from "external causes." Neither party disputes that the loss in this case was caused by an external cause. The exclusion, however, bars such coverage where the loss is due to "earth sinking, rising or shifting." We conclude that

208

these two provisions create an ambiguity as to whether the exclusion extends to loss caused by human action. The general rule of insurance contract construction holds that any ambiguity in an insurance policy must be construed against the insurance company which drafted the policy. *Maas*, 172 Wis. 2d at 79, 492 N.W.2d at 624. Furthermore, "all provisions, conditions or exceptions which tend to limit the liability of the insurer should be construed most strongly against it." *Wisconsin Builders*, 65 Wis. 2d at 103, 221 N.W.2d at 838. These principles support our conclusion that the earth movement exclusion does not apply in this case.

### 5.   The "Faulty, Inadequate or Defective Workmanship and Design" Exclusion

Section G.4.c. of the American Motorists policy recites an exclusion for faulty, inadequate or defective design, workmanship and other related activities. It reads as follows:

> **4.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.
>
> . . ..
>
> **c.** Faulty, inadequate or defective:
>
> . . ..
>
> **2.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction.

American Motorists argues that this exclusion applies because the jury found that: (1) the failure to connect the sewer lateral was defective workmanship,

and (2) the design of the blast freezer was faulty, inadequate and defective.

We disagree. The second sentence of the exclusion clause qualifies and limits the exclusion: *"But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage."*[5] As previously noted, American Motorists does not dispute that, absent an applicable exclusion, R & S's loss is embraced by the general grant of coverage. Thus, the effect of this exclusion is to bar coverage *where the loss in the first instance is not covered by the general grant of coverage.*

If the blast freezer had been damaged solely as the result of some internal defective design, not accompanied by an external cause, this exclusion would apply. But that is not what occurred in this case. Instead, an external cause which is covered (the accumulation of water caused by the heavy rains), in conjunction with other events which are not covered, produced the loss. Under the clear terms of this exclusion, the covered provisions take precedence.

## 6. Overlap Between Coverage and Exclusion Provisions

Section G.1. of the American Motorists policy recites an exclusion which applies when an overlap exists between a coverage provision and an exclusion provision. It reads as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. *Such loss or damage is excluded regardless of any other cause or event*

---

[5] The exclusions previously discussed do not include this qualifying language.

*that contributes concurrently or in any sequence to the loss.* [Emphasis added.]

In the trial court, American Motorists contended that if the loss was covered by the general grant of coverage but excluded by some or all of the various exclusions, the above exclusion barred coverage. The trial court rejected this argument, relying on case law which holds that in such an overlap situation, the insured risk prevails over the excluded risk. *See Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857, 863-64 (1979); *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d 356, 360, 329 N.W.2d 243, 246 (Ct. App. 1982). The trial court erred in this approach because in this case American Motorists' policy includes a provision which expressly bars coverage in an overlap situation. Such provision was not present in the *Kraemer* and *Benke* policies.

Nonetheless, we need not answer this question. Our previous discussions concerning the various exclusions asserted by American Motorists establish that none of those exclusions apply in this case. Thus, we do not have an overlap situation. We need not address this issue further.

## B.  LIMITED BUSINESS INCOME COVERAGE

The preceding discussion also governs the next issue. American Motorists argues that because some or all of its exclusions apply, the trial court erred in finding coverage under the limited business income coverage form provision of the policy. This provision provided coverage for expenses incurred by an insured

in mitigating its losses.[6] However, as we have already held, none of the exclusions applied in this case. Thus, R & S was entitled to this further coverage.

## C. INTEREST ON DOUBLE COSTS AWARD PURSUANT TO THE OFFER OF SETTLEMENT STATUTE

Pursuant to § 807.01(3), STATS., R & S served American Motorists with an offer of settlement of its counterclaim in the amount of $17,500.[7] American Motorists rejected the offer. Based on the jury's damage award, the judgment awarded R & S damages in the amount of $61,442.61. In addition, the judgment awarded R & S double costs of $1767.60 pursuant to subsec. (3) of the statute.[8] American Motorists does not dispute this portion of the judgment.

However, the trial court also awarded R & S interest on the double costs. The court relied on subsec. (4) of the offer of settlement statute. It reads as follows:

> If there is an offer of settlement by a party . . . which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to

---

[6] The expenses incurred by R & S related to investigating the cause of the damage. American Motorists does not argue that these expenses were not embraced by this provision. Rather, it argued that it was not responsible for the expenses because the loss was excluded.

[7] Although § 807.01(3), STATS., applies to a plaintiff making an offer of settlement, here R & S stood in the shoes of a plaintiff as the counterclaimant.

[8] Section 807.01(3), STATS., reads in relevant part as follows: "If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs."

interest at the annual rate of 12% on the *amount recovered* from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).[9] [Emphasis added.]

American Motorists contends that the phrase "amount recovered" is limited to the damages awarded, not double costs. R & S contends that the phrase means the total amount of the judgment and therefore includes double costs.

The question of whether interest awarded under § 807.01(4), STATS., is allowed on double costs awarded pursuant to § 807.01(3) requires that we construe the statute. This presents a question of law that we independently review. *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Ins. Co.,* 152 Wis. 2d 7, 11, 447 N.W.2d 367, 369 (Ct. App. 1989). In construing a statute, our primary objective is to discern legislative intent. *State ex rel. Shroble v. Prusener,* 185 Wis. 2d 103, 111, 517 N.W.2d 169, 172 (1994). The primary source to be used in determining legislative intent is the language of the statute. *Id.* Although it does not alter our approach, we observe that the statute at issue here is actually a supreme court rule enacted by

---

[9] Section 814.04(4), STATS., provides: "INTEREST ON VERDICT. Except as provided in s. 807.01(4), if the judgment is for the recovery of money, interest at the rate of 12% per year from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."

Section 815.05(8), STATS., provides: "Except as provided in s. 807.01(4), every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year on the amount recovered from the date of the entry thereof until paid."

supreme court order. *See* WISCONSIN RULES OF CIVIL PROCEDURE, 67 Wis. 2d 585, 741 (1976).

While R & S's argument has some elements of fairness to those who prevail in an offer of settlement situation, we agree with American Motorists that the language of § 807.01(4), STATS., does not embrace interest on a double costs award. The statute begins by describing the scenario in which an award of interest is permitted. This language requires that the party which made the offer recover *"a judgment"* greater than or equal to the offer of settlement. *Id.* (emphasis added). However, when prescribing the actual interest award, the statute, *in the very same sentence,* uses the phrase *"amount recovered." Id.* (emphasis added).

We conclude that the supreme court's selection of this different terminology in the same sentence of the same subsection of the same statute is noteworthy. Where the legislature uses similar but different terms in a statute, particularly within the same section, we presume it intended those terms to have different, distinct meanings. *Armes v. Kenosha County*, 81 Wis. 2d 309, 318, 260 N.W.2d 515, 519 (1977). If the supreme court had intended the latter phrase "amount recovered" to equate with the prior word "judgment" (the very argument proffered by R & S), we conclude that the court would have used the same word. *See* § 807.01(4), STATS. It did not. Instead, it used the phrase "amount recovered." *See id.* From this, we conclude that the supreme court had two different concepts in mind.

We therefore conclude that if the total judgment, including costs, meets or betters the offer of settlement, the party making the offer is entitled to twelve percent

interest from the date of the offer. However, the interest does not run on the double costs portion of the judgment.[10]

## CONCLUSION

We affirm the trial court's declaratory rulings regarding coverage. We reverse the trial court's ruling awarding R & S interest on its double costs. We remand for entry of judgment in accord with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

[10] By dicta in *Cue v. Carthage College*, 179 Wis. 2d 175, 177, 507 N.W.2d 109, 110 (Ct. App. 1993), we offered a similar interpretation of § 807.01(3), (4), STATS.:

[Section 807.01(3), (4), STATS.] provide[s], in part, that if the plaintiff tenders a written settlement offer at least twenty days before trial, the offer is not accepted, and the plaintiff recovers a judgment greater than the offer, the plaintiff is entitled to preverdict interest of 12% from the date of the offer until paid, *plus double costs.* [Emphasis added.]