**PAKMARK CORPORATION, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Respondent.**

No. 70564.

Missouri Court of Appeals, Eastern District, Division Four.

March 25, 1997.

Louis J. Basso, St. Louis, for appellant.

Joseph L. Leritz, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Pakmark Corporation ("Pakmark") appeals from a trial court order granting summary judgment in favor of Liberty Mutual Insurance Company ("Liberty Mutual") on Pakmark's claim to recover for losses resulting from sewer backup arising under an insurance policy. The trial court ruled that the terms of the insurance policy excluded from coverage damage to Pakmark's building caused by flood water and sewage backup. The granting of summary judgment was proper in that the insurance policy excluded loss caused directly or indirectly by flooding regardless of any sewage backup that contributed concurrently or in any sequence to the loss. We affirm.

Pakmark owns a building located in Chesterfield. The building is located approximately one to two miles away from the Missouri River. On the morning of July 30, 1993, Pakmark's president, Keith Kovacik, was warned about possible flooding in the Chesterfield Valley Area. Kovacik and his employees raised some of the company's equipment on skids and on tables in anticipation of the flood. The employees also built a sandbag levee around the building. A few weeks prior, Kovacik and some of his employees had noticed a foul odor emanating from the building's plumbing system. Kovacik noticed the odor again on July 30th. According to Kovacik, the toilets and sinks had not overflown prior to that time.

Later that evening, at approximately 10:40 p.m., the levee protecting the Chesterfield Valley Area broke. Kovacik and his employees were told by the police to evacuate the area. Kovacik was the last person to leave the building around 11:30 p.m. At that time, there was no sign of impending flood water nor sewage overflow.

The following morning, Kovacik saw the flooded Chesterfield Valley on the television news. He spotted the Pakmark building and an airplane which had floated up next to the building. Kovacik estimated that the flood waters appeared to be three to four feet high on the building. He did not know when the flood water reached the Pakmark building, but he estimated between midnight and 6:30 a.m.

Later that day, Kovacik went to the bluffs and observed the building with binoculars. The water had risen to approximately six feet against the building. The following day, the water reached its highest point at nine feet. On August 5, after the water in the building had receded to five feet, Kovacik inspected the building. While inside the building, he noticed that almost all of Pakmark's equipment was covered by water. He determined that the flood water had reached a height of 8' 7 3/4" from the water marks on the wall.

After the water had completely receded, Kovacik observed a residue of two to four inches in the building. He described the residue as brownish black substance which contained chemicals, grease, and other contaminants. Pakmark claimed that the residue was sewage. The residue covered some

of Pakmark's equipment. Kovacik was unable to determine the extent of the damage caused by the flood and the extent of damage caused by sewage backup. He stated that all of the property damage was from a combination of sewer backup and flood water.

At the time of the damage to the Pakmark building, Pakmark was insured under an all-risk policy of insurance issued by Liberty Mutual. On November 23, 1993, Pakmark submitted its proof of loss and supporting documentation claiming a loss as a result of sewer backup. Liberty Mutual rejected the proof of loss and refused payment on the claim.

■ Pakmark subsequently filed suit against Liberty Mutual for breach of contract and vexatious refusal. Liberty Mutual defended on the grounds that Pakmark's insurance policy did not provide coverage for its loss because of the following provision:

A. COVERED CAUSES OF LOSS

When Special is shown in the Declaration, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B; Exclusions; or

2. Limited in Section C; Limitations; that follow.

B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\*       \*       \*       \*       \*       \*

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

Both parties filed motions for summary judgment. On April 11, 1996, the trial court granted Liberty Mutual's motion for summary judgment and denied Pakmark's motion for summary judgment. The trial court found that summary judgment was appropriate because "any damage to Pakmark's prop-

erty resulting from 'sewer backup' occurred in combination with and concurrently with the damage caused by the flood," and therefore, any damage caused by "sewage backup" was excluded by the policy. This appeal follows.

In its two points relied on, Pakmark contends the trial court erred in granting Liberty Mutual's motion for summary judgment. Pakmark first argues that the trial court erred because the all-risk policy does not specifically exclude loss from sewer backup, and therefore, under the language of the policy, there was coverage for its losses. Secondly, Pakmark contends the trial court erred in granting summary judgment because when an insured risk and an excluded risk constitute concurrent proximate causes of damage, the insurer is liable so long as one of the causes is covered by the policy. We disagree with both arguments.

A summary judgment is appropriate if the motion and response demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid-Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of a summary judgment is purely an issue of law and our standard of review on appeal is essentially *de novo. Id.* We need not defer to the trial court's order granting summary judgment because its judgment is founded on the record submitted and the law. *Id.*

Summary judgment is particularly appropriate if the issue to be decided is the construction of a contract that is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.,* 897 S.W.2d 90, 91–92 (Mo.App.1995). Disputes arising from interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *Centermark Properties v. Home Indemnity Co.,* 897 S.W.2d 98, 100 (Mo.App.1995). Insurance contracts are designed to furnish protection, and therefore, they will be interpreted to grant coverage rather than defeat it. *Id.* at 100–01. Exclusion clauses in insurance policies are to be strictly construed against the insurer. *Id.* at 101. However, if

the language of the insurance policy is clear and unambiguous, we do not have the power to rewrite the policy for the parties and must construe the policy as written. *Madison Block Pharmacy, Inc. v. U.S. Fidelity & Guaranty Co.,* 620 S.W.2d 343, 346 (Mo. banc 1981).

Pakmark argues that its loss resulting from sewer backup is covered by the all-risk policy issued by Liberty Mutual because sewer backup is not specifically excluded from coverage. Pakmark's argument, however, ignores important language of the exclusionary clause contained in the policy. Although sewage backup is not per se excluded, the policy excludes from coverage "loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

■ Under an all-risk insurance policy, recovery will be allowed for all fortuitous losses, unless the policy contains a specific provision expressly excluding the loss from coverage. *Missouri Commercial Investment Co. v. Employers Mutual Casualty Co.,* 680 S.W.2d 397, 400 (Mo.App.1984)(quoting 13A G. Couch *Cyclopedia of Insurance Law* § 48:141 at 139 (R. Anderson 2d ed. 1982)). Such a provision excluding the loss from coverage exists in the Liberty Mutual Policy.

Both Pakmark's president and the insurance adjuster conceded that the damage to the property was from a combination of sewer backup and flood water. Ferd Lasinski, a public adjuster, was assigned to adjust Pakmark's claim of loss. On September 28, 1993, Lasinksi met with Kovacik to inspect the building. By that point in time, the flood water was gone and the building had been partially cleaned up and hosed down. Lasinski observed sediments of varying colors on the floor which were six to seven inches in depth. Upon disturbing the sediments, he noticed that they released a strong odor. Lasinski also observed water marks on the walls seven to eight feet high. He also noted that there was a mark along the perimeter of the building which had a height of eight to nine inches and was much darker in color

than the water marks. According to Lasinski, this mark was due to sewage.

Although Lasinski did not know how the flood water had entered the building, he believed that it entered through breaches in the building and through the sewer. It was Lasinski's understanding that once the sewers backed up, the flood waters came in and it was a joint effort that raised the sewage up to that level. Lasinski made a claim of loss for anything which had been touched by the sewage material. He acknowledged, however, that the items contained in the proof of loss were damaged by a combination of sewage backup and flood water.

Richard Gumerman, an engineer hired by Pakmark, visited the building on December 2, 1993. As part of his inspection, Gumerman observed "black muck" spread across the floor which was about 1/4 inch deep. Gumerman said the black muck was sewage because it was similar to the material he had cleaned out of drain pipes. Gumerman made no chemical analysis of the black muck. In his opinion, the water that came through the sewers was a mixture of sewage water, ground water, and flood water. He further opined that this sewer water entered the Pakmark building before it was inundated by the flood. According to Gumerman, flood water contains organic materials, waste, animal parts, and various other materials. Once the flood waters receded, these materials came to rest upon the building's floor, forming part of the sludge or "black muck" Gumerman had described.

George Sallwasser, an engineer hired by Liberty Mutual, was of the opinion that flood water entered the sewage system and came out into the Pakmark building. In a report prepared by Sallwasser, he concluded that most of the water going through the sewer system would have been flood water. Once the flood water entered the sewage system, it would have pushed any amount of wastewater that existed in the system ahead of it.

Pakmark maintains that recovery is not precluded by this provision because under Missouri law where an insured risk and an excluded risk constitute proximate causes of damage, an insurer is liable so long as one of the causes is covered by the policy. *Braxton*

v. United States Fire Insurance Co., 651 S.W.2d 616, 619 (Mo.App.1983); Centermark Properties, 897 S.W.2d at 101. Thus, according to Pakmark, since sewer backup is a covered cause and flood water is an excluded cause, Liberty Mutual is still liable because one of the causes (sewage backup) is covered by the all-risk policy. Pakmark's reliance on Braxton and Centermark Properties is misplaced. In both of those cases, the particular insurance policies did not contain the particular provision included in the Liberty Mutual policy.

The same provision in the Liberty Mutual policy existed in the insurance policy in American Motorists Insurance Co., v. R & S Meats, 190 Wis.2d 196, 526 N.W.2d 791 (1994). In American Motorists, an insurer sought a declaratory judgment that its commercial insurance policy did not cover loss caused by damage to insured's blast freezer. The insurance policy contained an exclusion provision identical to one contained in Liberty Mutual's policy. The provision provided that:

> We will not pay for loss or damage caused directly or indirectly by any of the following. *Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

*Id.* at 797 (emphasis in original). The insurer argued that if the loss was covered by the general grant of coverage but excluded by some exclusion, the above exclusion barred coverage. The trial court rejected insurer's argument, relying on case law which held that when a policy expressly insures against a loss caused by one risk but excludes a loss caused by another risk, coverage is extended to the loss caused by the insured risk even though the excluded risk is a contributory cause. The appellate court stated that the trial court erred in rejecting insurer's argument because the policy's provision expressly barred coverage in an overlap situation and

that this type of provision was not present in the cases cited by the trial court. *Id.*[1]

In another case in which the same provision was included in the insurance policy, *Alton v. Manufacturers & Merchants Mutual Insurance Co.*, 416 Mass. 611, 624 N.E.2d 545 (1993), an insured building owner brought suit against insurer for reimbursements for costs of damage to his building caused by the police during the execution of search warrants. The trial court ruled that the terms of the policy excluded from coverage damage caused by the police during the execution of various search warrants and granted insurer's motion for summary judgment. On appeal, insured also argued that the policy covered damage caused by a tenant's criminal activity. *Id.* at 547. The insured argued that although damage resulting from executing a search warrant may be an excluded cause, damage resulting from criminal activity was covered by the policy. Thus, according to insured, the damage was covered under the policy.

The Supreme Judicial Court of Massachusetts rejected the insured's argument. The court held that even if the insurance policy covered damage by the tenant's criminal activity, the following provision excluded coverage: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.*[2]

Pakmark also cites *Pace Properties, Inc. v. American Manufacturers Mutual Insurance Co.*, 918 S.W.2d 883 (Mo.App.1996), for the proposition that its claim is covered under its policy. In *Pace*, an insured sought recovery for damage resulting from the collapse of a retaining wall. Under the terms of the policy, retaining walls were covered "except when [the] loss is from water pressure, ice or impact of watercraft." *Id.* at 885. After the wall collapsed, the insurer denied coverage

---

1. The court, however, found that none of the policy's exclusions applied, and therefore, no overlap situation existed. *American Motorists*, 526 N.W.2d at 797.

2. *See Quadrangle Development Corp. v. Hartford Ins.*, 645 A.2d 1074, 1076 (D.C.App.1994)(Insur-

er does not have to prove that the excluded cause of loss was the proximate cause of the loss where this provision is applicable, because the provision allows denial of liability where the excluded cause is merely an indirect cause of the damage).

after determining that the wall collapsed due to soil and water pressure. Insured sued insurer and received a judgment in its favor. On appeal, insurer argued that the trial court erred in denying its motions for directed verdict because the proximate cause of the collapse was gradual deterioration of the wall itself, which was excluded under the policy. *Id.*

In *Pace*, the court distinguished between policy exclusions which exclude loss or damage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and policy exclusions which do not. The insurance policy in *Pace* divided exclusions into two separate paragraphs. Paragraph one applied "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Paragraph two provided that the insurer "will not pay for loss or damage caused by or resulting from the following: . . ." The deterioration exclusion followed paragraph two. This court rejected insurer's argument that the deterioration exclusion denied the insured coverage. Since paragraph two omitted the "regardless of any other cause" language found in paragraph one, the exclusions under paragraph two only applied when they were the sole cause of loss. *Id.* at 886. Thus, coverage would have been denied if deterioration was the sole cause of loss. However, this court noted that if the insured presented evidence of a covered cause of loss, then the insured would have made a submissible case. *Id.*

In a similar case to *Pace*, a homeowner sued an insurer to recover for loss which occurred when fuel oil spilled on adjacent property and later contaminated the homeowner's property. *Jussim v. Massachusetts Bay Ins. Co.*, 415 Mass. 24, 610 N.E.2d 954 (1993). The homeowner argued that the damages were caused by the negligence of others which was covered by the insurance policy. The insurer maintained that the damages were excluded by a provision in the policy which denied coverage for a loss caused by the release, discharge, or dispersal of contaminants or pollutants. The trial court granted the homeowner's motion for summary judgment declaring that the homeowner was covered by the policy. *Id.* at 955.

The Supreme Judicial Court of Massachusetts affirmed the trial court's judgment, noting that the insurance policy contained a general exclusion that provided: "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." The court stated that if the pollution exclusion had been listed in the general exclusion provision, following the above language, the insured's claim would have been excluded. *Id.* at 957–58.

■ In the present case, unlike *Pace* or *Jussim*, the flood exclusion was listed under the general exclusion provision. The Liberty Mutual policy clearly provides that there is no coverage "for loss or damage caused directly or indirectly," among other things, flood water, and "such loss or damage is excluded regardless of any other cause or event [i.e. sewage backup] that contributes concurrently or in any sequence to the loss." Section B.1 of the Liberty Mutual policy provides that an exclusion is an exclusion regardless of any other cause that contributes to the loss, either concurrently or in any sequence to the loss.

Pakmark also contends the trial court erred in granting Liberty Mutual's motion for summary judgment because representatives of Liberty Mutual have openly admitted that the insurance policy provided coverage for sewer backup. We disagree.

Pakmark cites depositions from Liberty Mutual representatives, indicating that in certain circumstances, damage from sewer backup may be covered by the policy. One representative stated that whether a sewer backup claim was covered by the policy depended upon the facts of the case. According to Pakmark, when representatives of an insurer openly admit that an insured's loss is covered under an insurance policy it issued, the insurance company is bound to act consistently with such an admission of coverage. *See Eagle Star Insurance Co. v. Family Fun Inc.*, 767 S.W.2d 623 (Mo.App.1989).

In *Mo. Commercial Investment*, plaintiff sued its insurer for loss due to the collapse of wooden trusses. 680 S.W.2d at 399. There was evidence that wind may have been a contributing factor to the collapse of the trusses. There was also evidence that inadequately braced trusses may have caused the trusses collapse. This type of loss was excluded from the plaintiff's policy. *Id.* at 399–400. The insurer's adjuster allegedly stated to one of the plaintiffs that its loss was covered by the insurance policy and that if wind caused the loss there would be coverage. *Id.* at 401. This court held that the adjuster's statements could be used as an admission that the cause of loss was not a cause of loss excluded from the policy. *Id.*

The facts of this case are distinguishable from *Mo. Commercial Investment*. Liberty Mutual's representatives did not state that Pakmark's loss was covered by the policy. Instead, the representatives stated that sewer backup may be covered depending upon the circumstances of the case. One representative commented:

> "[j]ust because its not excluded in that one section doesn't mean that a sewer backup claim has some other elements to it that might be excluded someplace else within the policy, so I can't give a carte blanche answer to whether or not sewer backup is a covered item or anything is a covered item."

The trial court properly granted Liberty Mutual's motion for summary judgment because the policy unambiguously excluded coverage for loss caused directly or indirectly by flooding regardless of any sewage backup that contributed concurrently or in any sequence to Pakmark's loss. We are compelled to construe the policy as written, and therefore, affirm the granting of summary judgment.

SIMON and KAROHL, JJ., concur