LEWANDOWSKI, Respondent, v. PREFERRED RISK MUTUAL INSURANCE COMPANY and another, Appellants.

*November 3—November 29, 1966.*

For the appellants there was a brief by *Pray, Pray & Clark* of Ashland, and oral argument by *Dale R. Clark.*

For the respondent there was a brief and oral argument by *Thomas M. Anich* of Ashland.

HALLOWS, J. The first issue concerns a question of whether the defendant received a fair trial because a juror withheld information on which she might have been challenged for cause or peremptorily. On *voir dire* the trial court asked the jury panel if any prospective juror or any member of his immediate family had any legal work done by the plaintiff's attorney within the last three years and whether any member of the immediate family of a prospective juror had sustained injuries in an automobile accident. Juror Grace Grehn made no affirmative response to these questions although it later developed on motions after verdict that her sister Mrs. Bitzer had sustained spinal injuries in an automobile accident in June, 1964, had a suit pending for recovery of such damages, and was represented by plaintiff's counsel. It also appeared the juror stopped in the office of the plaintiff's attorney within the preceding fifteen months on an errand for her husband.

The defendant contends the sister of the juror, although living in a separate household but in the same city as that of the juror, is a member of the juror's immediate family and therefore her answer was false even if unintentional. We think not. While sisters are members of their parents' family, they are not necessarily because of that membership members of each other's family. While the term "your family" is sometimes used to denote the family to which a person belongs, the term "immediate family" is more restrictive than the word "family" alone. "Immediate family" commonly is understood to mean persons who are related by blood, adoption or marriage and are living together in the same household as a unit. An immediate relative is not necessarily a member of an immediate family. See for substantially the same definition of "immediate family" for other purposes, 38 Am. Jur., Mutual Benefit Societies, p. 560, sec. 153, "by 'immediate family' is meant those members of

the same household to which the insured belongs who are bound together by ties of relationship . . . ." Sec. 29.544, Stats., provides: "The term 'immediate family' includes husband and wife and minor children having their abode and domicile with the parent or legal guardian." We think juror Grehn's interpretation of the question was reasonable and that she gave no false answer by her silence.

Juror Grehn at the request of the trial court appeared at the hearing of motions after verdict. The trial court refused to allow the defendant to examine her concerning her errand to the office of the plaintiff's attorney fifteen months before. This denial was based on the ground the affidavit of the defendant did not cover that area of inquiry. We find no error by the court. To examine a jury after trial to establish a false or erroneous answer by a prospective juror during the preliminary examination as a ground for a new trial, a proper and sufficient foundation must be laid in the moving papers. The hearing cannot partake of the characteristics of a fishing expedition. On the problem generally, see Anno. Effect of juror's false or erroneous answer on *voir dire* as to previous claims or actions against himself or his family, 63 A. L. R. (2d) 1061.

The second assignment of error concerns the trial court's refusal to receive in evidence the "Guide to the Evaluation of Permanent Impairment of the Extremities and Back," published by the American Medical Association, and the refusal to receive in evidence three offered medical reports of the orthopedic surgeon who was not called to testify by the plaintiff. Three months after the accident the plaintiff went to Dr. A. H. Larson, a general practitioner in Ashland. After taking X rays, which proved negative, Dr. Larson referred the plaintiff to Dr. Atmore, an orthopedic specialist in Duluth. Dr. Atmore conducted a myelogram, a very painful process, but this showed no cervical disc protrusion. Plaintiff was re-

ferred to Dr. William Pollard, a neurological surgeon who, feeling further testing was necessary, performed a discogram. This examination showed the discs between the fourth and fifth and between the fifth and sixth cervical vertebrae were ruptured. An operation was performed by which these discs were removed and the vertebrae fused together with bone from the hip. This resulted in a permanent impairment in the function of the plaintiff's spine, which in Dr. Pollard's opinion was 20 percent of the whole spine or 10 percent disability of the body generally.

Dr. Frank Kruse examined the plaintiff on behalf of the defendant and estimated this disability as 10 percent of the spine and four to five percent of the body as a whole.

On cross-examination Dr. Pollard was asked if he was familiar with the "Guide." He answered he was, but that he was not familiar with what the guide set for fusing or ankylosing of any two cervical vertebrae and he had not consulted the guide in making his estimate of the disability of the plaintiff. In examining Dr. Kruse, defense counsel again referred to the guide and asked the witness if he knew what standard for disability the guide provided when ankylosis of two cervical vertebrae occurred. Objection to this question was sustained on the ground the answer would be hearsay.

The trial court was not in error in refusing to admit the guide or its contents in evidence. Dr. Pollard stated he had not consulted it and thus the necessary basis for impeachment did not exist. *Knoll v. State* (1882), 55 Wis. 249, 12 N. W. 369. From early times and up to now the rule in Wisconsin has been that medical texts are not admissible as independent substantive evidence because of being in violation of the parol-evidence rule. *Waterman v. Chicago & Alton R. Co.* (1892), 82 Wis. 613, 52 N. W. 247, 52 N. W. 1136; *Kreuziger v. Chicago & N. W. R. Co.* (1888), 73 Wis. 158, 40 N. W. 657; see

also *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392; 3 Jones, Evidence (5th ed.), p. 1181, sec. 621; Anno. Medical Books as Evidence, 65 A. L. R. 1102. The use of standard medical works has been allowed to test qualifications of a medical witness or to impeach him if he has based his opinion on such treatise or has stated what the standard text contained. *Ripon v. Bittel* (1872), 30 Wis. 614; *Bruins v. Brandon Canning Co.* (1934), 216 Wis. 387, 257 N. W. 35; also 11 Wisconsin Law Review, 36. To allow the use of a scientific or medical work for impeachment purposes, a medical expert must have a familiarity with the book and its contents and have based his opinion upon or testified concerning the book. *Bell v. Milwaukee E. R. & L. Co.* (1919), 169 Wis. 408, 172 N. W. 791. Here, Dr. Pollard did not so testify.

The rule that medical and scientific textbooks are inadmissible as independent substantive evidence has worked hardship in many cases, particularly because of the difficulty of obtaining medical testimony. Where the foundation is laid that the work is authoritative, recognized by the medical profession, and one which has influence upon medical opinions, such works have now been admitted as independent evidence. 2 Jones, Evidence (5th ed.), p. 794, sec. 421 (1966 Supp.). The Uniform Rules of Evidence, Rule 63, sec. 31, 9A U. L. A. 591, 640, provide that "[a] published treatise, periodical or pamphlet on a subject of history, science or art" should be admitted in evidence as an exception to the hearsay rule "to prove the truth of a matter stated therein if the judge takes judicial notice, or a witness expert in the subject testifies, that the treatise, periodical or pamphlet is a reliable authority in the subject." Rule 529 of Model Code of Evidence of the American Law Institute is substantially the same. We consider this to be the better rule and adopt it for future cases. This is but another example of accepting the scientific process in the search

for truth instead of reliance upon the efficacy of an oath as a guaranty of trustworthiness. See for a review of the problem Dana, A Code of Evidence for Wisconsin— Admission of Learned Treatises in Evidence, 1945 Wisconsin Law Review, 455.

The defendant also complains that he was not permitted to impeach Dr. Larson's testimony that the plaintiff had a disc protrusion when the basis for his knowledge was in letters not in evidence, and that he prescribed the wearing of a cervical collar. The contention is made that Dr. Larson referred plaintiff to Dr. Atmore who performed tests and reported the results and his recommendations to Dr. Larson in three letters upon which Dr. Larson relied in his opinion. Dr. Atmore did not testify. It is quite obvious these letters are hearsay evidence and inadmissible unless they come within some exception to the hearsay rule. 3 Jones, Evidence (5th ed.), p. 1202, sec. 632; *Manning v. School Dist. No. 6* (1905), 124 Wis. 84, 102 N. W. 356. However, we think the rule should be that where a doctor relies on the opinion or findings of another doctor, that such opinions or findings are admissible in evidence for the purpose of impeachment. If unsworn opinions or reports are relied upon by experts as trustworthy, their trustworthiness is sufficiently established to make them admissible for impeachment purposes as an exception to the hearsay rule. Such secondary opinions or reports are not immune because the witness is an expert. If he relies on such hearsay to form his opinion, the foundation of the expert opinion is admissible for impeachment purposes or to test the validity of the opinion.

While we consider it was error not to allow these letters in, such error was not prejudicial. It is quite plain in the evidence that Dr. Larson did not base his opinion upon Dr. Atmore's letters or his tests and the letters would only have confirmed evidence to the effect that Dr. Atmore's tests disclosed no injury. Likewise, whether

Dr. Larson or Dr. Atmore advised wearing a cervical collar was not an issue of great moment and not so prejudicial as to contribute materially to the verdict or to have changed it if Dr. Atmore's letters had been admitted.

The defendant contends the excessiveness of the $32,500 verdict for pain and suffering and disability was the result of passion and prejudice. The trial court found the verdict excessive but not the result of passion and prejudice, and therefore applied the *Powers* rule which it could not have done had the verdict been the result of the prejudice or passion of the jury. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393; *Dykstra v. Cudahy Bros. Co.* (1961), 13 Wis. (2d) 275, 108 N. W. (2d) 526; see Campbell, Wisconsin Law Governing Automobile Accidents, 1962 Wisconsin Law Review, 557, 582.

From a review of the record, we cannot say the trial court was wrong in not finding passion and prejudice. The question relating to the verdict is thus resolved to the question whether the court abused its discretion in reducing the award to $20,000. In applying the *Powers* rule, the court must set the amount of damages at a figure which it considers to be the most reasonable in view of the evidence, and since reasonable men may differ, the trial court's determination will be upheld if it falls within a range of reasonableness. *Moldenhauer v. Faschingbauer* (1966), 30 Wis. (2d) 622, 628, 141 N. W. (2d) 875. Consequently, the figure fixed by the trial court for a jury award which is either insufficient or excessive because of error relating to damages, or because it is not sustained by the evidence, will be reversed only if the trial court has abused its discretion. *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 571, 117 N. W. (2d) 660; *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 126 N. W. (2d) 503; *Davis v. Geib* (1966), 32 Wis. (2d) 14, 145 N. W. (2d) 192.

The defendant argues $20,000 is still excessive in view of the evidence of damages. The plaintiff on review argues the original award should be reinstated. The plaintiff is entitled to make this argument under *Plesko v. Milwaukee* (1963), 19 Wis. (2d) 210, 120 N. W. (2d) 130, where we held on an appeal by the defendant, the plaintiff on a motion for review was entitled to raise the question of damages although he had accepted the reduced amount of damages. If we understand the plaintiff's argument correctly, he also argues that if the defendant's contentions as to damages are unsuccessful on appeal, the original award of the jury should be reinstated automatically upon the plaintiff's motion for review. This argument we do not consider valid. The amount of the verdict depends upon the evidence, not upon who loses an appeal.

We do not consider it necessary to recount the evidence. The plaintiff was employed as a landscaper and janitor. After the accident he could not do heavy work in connection with his employment without assistance. At the time of trial he was still experiencing pain in his neck and had not recovered the full strength of his hands. The injury limited his recreational activities as well as his ability to work. During the examinations preceding the operation, the plaintiff was subjected to a great deal of pain as the examinations were based upon reaction to induced pain. In view of the pain the plaintiff has and will suffer and the extent of his disability, we do not think the trial court abused its discretion in setting the damages in the amount which it did.

*By the Court.*—Judgment affirmed.