IN THE MATTER OF ESTATE OF

CHISNEY BENALLY aka

SEE CHISNEY BENALLY

RUTH CHARLEY

Intervenor-Appellant

vs.

CHRISTINE BENALLY

Defendant-Appellee

Decided on July 7, 1978

Albert Hale, Window Rock, Arizona, for Defendant-Appellee

Robert Yazzie, D.N.A., Window Rock, Arizona, for Intervenor-Appellant

Before NESWOOD, Acting Chief Justice, BLUEHOUSE and WALTERS, Associate Justices

NESWOOD, Acting Chief Justice

I

Prior to his death on October 12, 1972, Chisney Benally held a grazing permit for District 12 with a carrying capacity of thirty (30) sheep units.

Shortly before his death, the decedent orally devised his grazing permit to his wife, Christine Benally. This was done in the presence of his wife and his four (4) children by her, Stella J. Benally, Casey Benally, Clarence P. Benally and Marilyn Dawes. The decedent's children by his first marriage, Florence Warner, Esther Joe, Ruth Charley, and May Jean Benally, were not present at the time the decedent devised the permit.

The appellees filed a petition for probate of the estate in the Shiprock District Court on October 18, 1976, alleging that the only item within the estate was the grazing permit, which was community property. The petition named only the four (4) children of the second marriage.

Three of the decedent's children of his first marriage then filed a motion to intervene and maintained they were entitled to a portion of the estate.

On January 20, 1977, the appellee filed an amended petition naming the children from both marriages. The petition alleged that the decedent had orally devised the grazing permit to the appellee in the presence of his immediate family.

On February 7, 1977, appellants filed a "Claim Against The Estate" alleging that the permit was given to Ruth Charley by the decedent.

The Shiprock District Court found that the decedent made an oral will in the presence of his immediate family and therefore assigned the permit to the appellee.

From the probate decree of the Shiprock District Court, Ruth Charley appeals.

The appeal in this matter raises four issues:

1.  What is the definition of the "immediate family" for the purpose of an oral will?

2.  Did the decedent satisfy all the requirements in making an oral will?

3.  Are decedent's widow and children competent to testify as to the oral will?

4.  May a grazing permit be devised through a valid oral will?

III

In the case of In Re Estate of Lee (1971), the Court of Appeals stated:

"It is a well established custom that a Navajo may orally state who shall have his property after his death when all of his immediate family are present and agree and that such a division will be honored after his death. We know of no other custom in this respect. We hold, therefore, that unless all of the members of his immediate family are present and agree a Navajo cannot make an oral will. Since the wife and children were not present when the deceased made the alleged oral

will to the petitioner, we hold that it was invalid".

The appellant maintains that the decedent's children by his first marriage are members of the immediate family. Since these children were not present when the decedent devised the grazing permit, the appellant claims that the requirement of In Re Estate of Lee was not met and that there was no oral will.

This Court has examined the definitions of "immediate family" by other courts. These courts have all held that mere blood relationship does not make a person a member of the immediate family.

In Lewandowski v. Preferred Risk Mutual Insurance, 33 Wis.2d 69, 146 N.W.2d 505, the Wisconsin Supreme Court stated:

"...'immediate family' means person related by blood, adoption or marriage and living together in the same household, and immediate relative is not necessarily a member of the immediate family". (emphasis added)

In Cincinnati, N. & C. Railway Company v. Peluso, 293 S.W.2d 556, 558, the Court of Appeals of Kentucky stated:

"the 'immediate family' are those members of the same household who are bound together by ties of relationship."

We adopt the rule that the children of the decedent's first

marriage, who were not living with the decedent when he died, are not members of the immediate family for the purpose of an oral will.

We are limiting this rule on the immediate family to cases involving oral wills because the Court is mindful of the Navajo concept of the extended family. This rule is adopted because it would work too great a hardship on the Navajo People to require the presence of all who might be considered immediate family by the Navajo Extended family concept. Since many Navajo cannot write, cannot afford to have an attorney write a will and do not understand the concept of a written will, is important that there be some alternate method by which a person may devise his property.

IV

Since the children of the first marriage are not members of the decedent's family, we look to see if the remaining requirements of an oral will were met.

The will was made in the presence of the decedent's wife and children of that marriage. No evidence was produced at the trial to show any disagreement among the members of the immediate family. We therefore conclude that there was a valid oral will.

V

Appellant argues that the appellee and her children should

-223-

not be allowed to testify to the oral will by virtue of the Dead Man's Act. The effect of the application of the Dead Man's Act would be to invalidate all oral wills as the immediate family could not testify.

We stated previously in this opinion that it is necessary to allow for oral wills in order to avoid hardship for the Navajo People. Accordingly, we decline to impose a rule of law that would make it impossible to make an oral will.

The Dead Man's Act has never been adopted in the Navajo Nation. We feel there is ample opportunity for an opposing party to cross-examine the witnesses and the credibility of the testimony can still be challenged.

## VI

Appellant's final argument is that a grazing permit can only be devised by a written will. For this proposition, appellant cites 3 N.T.C 355(a) which states:

> (a) Permittees and licensees may execute a will designating the person or person(s) to receive the permit or license, which must be approved by the Court of the Navajo Tribe after the death of permittee or licensee. In the absence of such an instrument approved by the Court, and unless stipulated to the contrary under agreement of the potential heirs approved by the Court, the Court is hereby authorized

to distribute such permits or licenses in accordance with moral and legal rights as determined by the said Court.

As we stated eariler in this opinion, it would create a great hardship for the Navajo People if they were required to make written wills in every instance in order to devise their property. Therefore, the law must be interpreted liberally to allow oral wills if the statute can be so construed without changing its intent or meaning.

Black's Law Dictionary defines "execute" as to complete; to make; to perform; to do. The definition does not require that the execution be in writing.

We believe that 3 N.T.C. 355(a) should be read in this manner. Nothing in the Navajo Tribal Code leads us to believe that the Tribal Council intended to require a written document.

The judgment of the District Court is AFFIRMED.

BLUEHOUSE, Associate Justice and WALTERS, Associate Justice, concur.