Peggy Allison BROADHEAD, Plaintiff-Respondent-Cross-Appellant,

GENERAL CASUALTY, Plaintiff-Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 97–0904. Submitted on briefs January 22, 1998.—Decided February 26, 1998.*

(Also reported in 579 N.W.2d 761.)

232

235

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Susan G. Molini* of *Czajkowski & Rider, S.C.* of Prairie du Chien.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the brief of *Kevin C. O'Keefe* and *Timothy S. Jacobson* of *O'Keefe Jacobson* of La Crosse.

Before Eich, C.J., Vergeront and Deininger, JJ.

DEININGER, J. State Farm Mutual Automobile Insurance Company appeals a judgment awarding Peggy Broadhead damages and costs for personal injuries she sustained as a result of an automobile accident with State Farm's insured. State Farm claims the trial court erred when it refused to permit a former juror in the case to testify as a witness. State Farm also cites as error the admission, as "learned treatises" under § 908.03(18), STATS., of excerpts from two medical journals. Broadhead cross-appeals the trial court's refusal to award her double costs pursuant to § 807.01(3),

236

STATS.[1] We conclude that the trial court did not erroneously exercise its discretion when it refused to allow the former juror to testify. We also conclude that the admission of the medical journal excerpts as "learned treatises" was error, but that the error was harmless. Finally, we conclude that the trial court's decision to deny Broadhead double costs was correct. Accordingly, we affirm the judgment.

## BACKGROUND

Peggy Broadhead was injured in a 1992 automobile accident with an insured of State Farm. The parties stipulated to the negligence of State Farm's insured and to State Farm's resulting liability, but they reached no agreement regarding the nature and extent of Broadhead's injuries. The damages issue was thus tried to a jury.

During a videotaped deposition conducted prior to trial, Broadhead's counsel asked State Farm's expert medical witness, Dr. Charles Desch, whether he had read particular articles from *Spine* magazine and the *Journal of Musculoskeletal Medicine*. Dr. Desch responded that he had not. Desch also testified that *Spine* magazine itself was "authoritative and reliable," but that the *Journal of Musculoskeletal Medicine* was "not a front-line journal for orthopedic surgeons." The physician was asked no questions about, and he made

---

[1] Section 807.01(3), STATS., provides, in relevant part, as follows:

> After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. . . . If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

no comments regarding, the authors of the specific articles. Broadhead's counsel then requested that Dr. Desch read passages from the articles into the record. Counsel for State Farm objected to a lack of proper foundation, following which Dr. Desch complied with the request. Before trial, State Farm filed a motion in limine asking the court to exclude the portion of Dr. Desch's videotaped deposition in which he read from the articles. The trial court denied the motion and the challenged portion of the videotaped deposition was presented to the jury.

When Broadhead's husband testified on the first day of trial, juror Patrick Nolan realized that his assertion during voir dire that he did not know Broadhead was incorrect, and he so informed the bailiff when testimony had concluded for the day. Nolan subsequently explained to the court that he initially had not recognized Broadhead during jury selection, but that he recalled his acquaintance with her when hearing her husband's testimony. Specifically, Nolan recalled that Broadhead and her husband had done some work on a roof at his farm in 1995. Nolan went on to explain that he observed Broadhead carry five gallon buckets of roof coating material up a ladder and then apply the material to his roof. The activities which Nolan witnessed took place some two or three years after Broadhead's car accident.

After this revelation, the trial court dismissed Nolan as a juror but denied State Farm's request to call Nolan, his wife or his father as a witness in the trial. State Farm subsequently moved for a mistrial which the court also denied. The next day, State Farm again moved for a mistrial, or in the alternative, for a new trial because of "newly discovered evidence." The trial court denied these motions. The jury returned a verdict

which awarded Broadhead a total of $38,116.25 in damages for her injuries.

In post-verdict motions, State Farm requested a new trial pursuant to § 805.15, STATS. Broadhead filed a post-verdict motion arguing that because State Farm had rejected a pretrial offer to settle the case for "$42,000, with costs," the trial court should award double costs under § 807.01, STATS., and interest from the date of the pretrial offer of settlement. The trial court denied all post-verdict motions and entered judgment for $38,116.25 in damages, $3,536.00 in costs, and $488.72 in post-verdict interest, for a total of $42,140.97.

On appeal, State Farm claims the trial court erred by refusing to permit testimony by the Nolans. State Farm also complains of the admission of the journal excerpts under § 908.03(18), STATS., the "learned treatise" exception to the hearsay rule, citing Broadhead's failure to lay a proper foundation for admission of the materials. In her cross-appeal, Broadhead claims error in the trial court's denial of her request for double costs under § 807.01(3), STATS.

## ANALYSIS

### a. Exclusion of Testimony from the Nolans

■

Whether to permit the testimony of a witness is generally within the trial court's discretion. *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth.,* 161 Wis. 2d 472, 490, 468 N.W.2d 663, 671 (1991). Whether to grant a mistrial is also a matter for the trial court's discretion, and we accord great deference to a trial court's decision on a motion for mistrial. *State v. Foy,* 206 Wis. 2d 629, 644, 557 N.W.2d 494, 499 (Ct. App.

1996). We review discretionary decisions to determine whether the trial court examined the relevant factors, applied the appropriate standard of law and engaged in a rational decision-making process. *Id.*

State Farm argues that the trial court erroneously exercised its discretion when it refused to permit Nolan, or Nolan's wife or his father, to testify after the court discharged Nolan from the jury. State Farm asserts that the trial court should have undertaken a probative value versus prejudice analysis, as required under § 904.03, STATS.,[2] which would show that testimony from one or more of these witnesses should have been permitted. According to State Farm, the Nolans' testimony would have been relevant and highly probative of Broadhead's injuries and her credibility, and it would have produced little or no unfair prejudice, confusion or undue delay.

■

We cannot review the propriety of disallowing testimony from Nolan's wife or from his father in the absence of a showing in the record as to what their testimony would have been. While Nolan helpfully interjected "[w]hat about my wife. She knows all about it," after the court denied State Farm's request to call the former juror as a witness in the trial, there is nothing in the record to indicate what Mrs. Nolan actually observed on the day in question. Calling Nolan's father to testify was later mentioned as a possibility by State Farm's counsel, again without an offer of proof as to

---

[2] Section 904.03, STATS., provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

what, if anything, he might have testified to regarding the matter. When a claim of error is based upon the trial court's erroneous exclusion of evidence, "an offer of proof must be made in the trial court as a condition precedent to the review of any alleged error." *McClelland v. State,* 84 Wis. 2d 145, 153, 267 N.W.2d 843, 847 (1978); *see* § 901.03(1)(b), STATS. State Farm's failure to establish whether Nolan's wife or father could have offered any relevant testimony therefore precludes us from reviewing this alleged error. *State v. Hoffman,* 106 Wis. 2d 185, 217–18, 316 N.W.2d 143, 160 (Ct. App. 1982).

Thus, we review only whether the trial court erred in excluding Nolan himself from testifying, and we conclude that the trial court's refusal to allow testimony from Nolan was reasonable under the circumstances. While "[e]very person is competent to be a witness," § 906.01, STATS., the Wisconsin rules of evidence contain an exception in the case of jurors:

> A member of the jury may not testify as a witness before that jury in the trial of the case in which the member is sitting as a juror. If the juror is called so to testify, the opposing party shall be afforded an opportunity to object out of the presence of the jury.

Section 906.06(1), STATS. Nolan, of course, ceased to be a member of the jury once he was discharged by the court. Nonetheless, inasmuch as he had been a member of the jury during voir dire and an entire day of testimony, most of the problems which the juror incompetence rule implicitly seeks to avoid would have been present had Nolan been allowed to testify. *See People v. Knox,* 157 Cal. Rptr. 238, 246 (Cal. Ct. App. 1979).

It is likely that Nolan's testimony would be accorded considerable weight and credibility by his former colleagues on the jury, regardless of whether it was merited, for no other reason than Nolan had been one of them. Broadhead's counsel might well have been unable to freely cross-examine or impeach Nolan due to a concern that it might antagonize the remaining jurors. Conversely, if Broadhead did not attack Nolan's credibility, the remaining jurors might have yet another reason to accord his testimony undue weight. The trial court succinctly stated its rationale for excluding any testimony from Nolan when it noted: "The reason is although we want to achieve justice, we can't be turning jurors into witnesses in front of the same jury that they sat on." We agree and find it hard to envision any circumstance under which it would be appropriate to allow a person who has been discharged from a jury in mid-trial to testify before that same jury.

Whether the trial court should have granted a mistrial, however, thereby permitting State Farm to present Nolan's testimony to a new jury, is perhaps a closer question. State Farm cites the following statements, made by Nolan when he revealed his knowledge and bias to the court, as being relevant to and probative of issues important to the defense:

> JUROR NOLAN: [F]inally [Mrs. Broadhead] came up one day and [painted the roof]. That's why I can't believe anything she says because they're saying that she can't lift over 35 pounds and these are five gallon pails of paint. She has to crawl up there, paint the roof and go like this.
>
> . . . .
> JUROR NOLAN: I'd like to tell them what—I mean, I'd probably be fair but I already know a lot

about their credibility. First they say they're going to come up. They don't come up. Then I get mad at 'em. Then finally she has to come up and then she lifts these big heavy pails.

Although the trial court denied State Farm the opportunity to present Nolan's testimony to the jury, it did permit cross-examination of Broadhead on the matters Nolan brought to light so long as it was done "in a way that would [not] identify that it is the Nolan farm." Being thus forewarned, Broadhead's counsel broached the subject in his direct examination of her. Broadhead testified that she and her husband had been involved briefly in a painting business; that she did only work that she was able to do, including carrying partially full buckets of paint weighing about ten pounds; and that she and her husband discontinued the business "because of problems with my neck." State Farm's counsel cross-examined her briefly on the topic, establishing that she had on one occasion done roof coating at a farm by herself; that the job required her to climb a ladder to a roof carrying "a bucket of roofing material" ten or more times; and that she coated the whole roof. Broadhead did interject during this questioning that the bucket "wasn't full" and that it had only "a gallon of paint in it."

The defense presented testimony from the driver of the vehicle which had collided with Broadhead's; from a private investigator who had observed and videotaped Broadhead performing her duties as a housekeeper at a motel; from a physician who had performed an independent medical examination; and from a vocational expert. State Farm nonetheless claims that it was "unable to fully try its case" without Nolan's testimony because it was deprived of the opportunity to contradict Broadhead's testimony that the buckets of

roofing material she admitted carrying up a ladder to the roof were not full. We conclude, however, that the trial court did not erroneously exercise its discretion in denying a mistrial, the only purpose for which would have been to allow State Farm to contest a minor and barely relevant detail of the "roof coating incident."

We do not know from Nolan's comments whether he would have been able to testify with certainty regarding the fullness of the buckets. Even if he had testified that the five gallon buckets were full, however, that detail would have added little to the point already made to the jury: some two years after the accident, the plaintiff had engaged in rather demanding physical labor that required repeated lifting, ladder-climbing and roof coating. That fact, together with the other evidence State Farm presented, was more than sufficient to convey to the jury its position that Broadhead was exaggerating the nature and extent of her accident-related injuries. The degree of fullness of the bucket was not a crucial fact, nor a major part of the defense case.

Had the trial court expressly analyzed the proffered Nolan testimony under § 904.03, STATS., it could easily have determined that its limited probative value was outweighed by the danger of "confusion of the issues," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. We conclude, therefore, that the trial court did not erroneously exercise its discretion when it disallowed Nolan's testimony and denied State Farm's motion for mistrial.

b. *Admission of Excerpts from Medical Journals*

244

A trial court's decision to admit evidence is discretionary and will not be disturbed unless the court has erroneously exercised its discretion. *Johnson v. Kokemoor,* 199 Wis. 2d 615, 635–36, 545 N.W.2d 495, 503 (1996). If the trial court bases its decision upon an error of law, however, its conduct is beyond the limits of discretion. *Magyar v. Wisconsin Health Care Liab. Ins. Plan,* 211 Wis. 2d 296, 302, 564 N.W.2d 766, 768 (1997). In determining whether the trial court applied the proper legal standard to the facts of this case, we must interpret § 908.03(18), STATS. The interpretation of a statute is a question of law which we review without deference to the trial court. *Stockbridge Sch. Dist. v. DPI Sch. Dist. Boundary Appeal Bd.,* 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996).

Section 908.03(18), STATS., creates the following exception to the general rule against the admission of hearsay:

> LEARNED TREATISES. A published treatise, periodical or pamphlet on a subject of history, science or art is admissible as tending to prove the truth of a matter stated therein if the judge takes judicial notice, or a witness expert in the subject testifies, that the writer of the statement in the treatise, periodical or pamphlet is recognized in the writer's profession or calling as an expert in the subject.

The trial court concluded that Broadhead had laid a proper foundation for admitting excerpts from *Spine* and the *Journal of Musculoskeletal Medicine* by establishing through the testimony of Dr. Desch and another physician, Dr. Halter, that the periodicals themselves

were "reliable and authoritative."[3] Specifically, the trial court stated:

> [T]he fact that the testimony indicates that the article is authoritative as opposed to the witness saying that the article writer was an expert in that field is not a substantial difference. It is equivalent and so it is that condition precedent or groundwork there is—has been laid.

(In their depositions, Dr. Desch acknowledged that "the *Journal of the Spine* was 'authoritative and reliable,' " and Dr. Halter said that "Spine . . . is a reputable journal," and that a number of articles from *Spine* and another journal were "reliable and authoritative." Neither physician gave a similar endorsement to the *Journal of Musculoskeletal Medicine,* however.) By stipulation, no articles or excerpts were given to the jury; the jurors heard only the excerpts read by Dr. Desch during his deposition.

Even though the provision at issue has its origin in a Wisconsin Supreme Court Order, *see* 59 Wis. 2d R1 (1974), we conclude that our interpretation of it must begin, as it would for a legislative enactment, with a consideration of the language of § 908.03(18), STATS. The object of statutory construction is to discern legislative intent. *Stockbridge Sch. Dist.,* 202 Wis. 2d at 219, 550 N.W.2d at 98. If legislative intent can be discovered from the plain language of the statute, then no further investigation is necessary. *Id.* at 220, 550 N.W.2d at 98–99. Broadhead claims that the distinction between testimony regarding the expertise of the

---

[3] Broadhead's counsel had provided State Farm with notice and copies of the journal articles in question more than forty days prior to trial. *See* § 908.03(18)(a), STATS.

writer of a treatise and the reliability of the treatise itself is insignificant, and that implicit within testimony regarding a treatise's reliability is the fact that its writers are recognized as experts. We disagree, and conclude that Broadhead's reasoning would strip § 908.03(18) of its intended meaning. *See Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 539, 345 N.W.2d 389, 394 (1984) ("The more reasonable presumption is that the legislature chose its terms carefully and precisely to express its meaning.").

■■■

Rather, we hold that, because the language of § 908.03(18), STATS., plainly requires that before an excerpt from a periodical article may be admitted as substantive evidence, an expert in the field must testify that "the writer of the statement in the . . . periodical . . . is recognized in the writer's profession or calling as an expert in the subject," the trial court based its decision to admit the excerpts on an erroneous interpretation of the statute.

The history and origin of Wisconsin's hearsay exception for learned treatises support our conclusion. *See State v. Sample,* 215 Wis. 2d 486, 507, 573 N.W.2d 187, 196 (1998) (Abrahamson, C.J., concurring) (" 'When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clean the words may appear on superficial examination.' ") (quoted source and internal quotation marks omitted). The Wisconsin hearsay exception for learned treatises is based on "Model Code Rule 529 adopted in *Lewandowski v. Preferred Risk Mut. Ins. Co.,* 33 Wis. 2d 69, 76, 146 N.W.2d 505, 509 (1966)." Judicial Council Committee Note, § 908.03(18), *Stats.* Wis. Rules of Evidence, 59 Wis. 2d R294 (1974). The Model Code

specified the following foundation requirement for learned treatises: "if the judge takes judicial notice, or a witness expert in the subject testifies, that the writer of the statement in the . . . periodical . . . is recognized in his profession or calling as an expert in the subject." ALI MODEL CODE OF EVIDENCE, Rule 529 (1942). By contrast, the hearsay exception for learned treatises in the Federal Rules specifies that the foundation required for admission of a learned treatise is that it be "established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice." FED. R. EVID. 803(18). The *Lewandowski* court noted that another alternative provision, contained in the "Uniform Rules of Evidence," required that "a witness expert in the subject testifies, that the . . . periodical . . . is a reliable authority in the subject." *Lewandowski*, 33 Wis. 2d at 76, 146 N.W.2d at 509.

While the Judicial Council Committee did not comment on the differences in the foundation requirements under the various alternatives considered, it did make clear that the choice of the Model Rule 529 formulation was deliberate: "[t]he Model Code rule was retained in preference to the Federal Rule because it is a more liberal treatment of the subject." 59 Wis. 2d at R294. It thus appears that foundation requirements focusing on the reliability of the treatise itself, much like the interpretation adopted here by the trial court, were known to and considered by the Wisconsin Supreme Court when it adopted § 908.03(18), STATS. Those alternatives, however, were rejected in favor of a provision requiring the writer of the out-of-court statement to be recognized as an expert.

Even though we conclude that the trial court admitted the journal excerpts without a proper foundation, we also conclude that the error was harmless.

248

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ." Section 901.03(1), STATS.; *see also* § 805.18(2), STATS. We need only reverse if, after weighing "the effect of the inadmissible evidence against the totality of the credible evidence supporting the verdict," we conclude that "the result might, within reasonable probabilities, have been more favorable" to State Farm had the error not occurred. *Nowatske v. Osterloh*, 201 Wis. 2d 497, 507, 549 N.W.2d 256, 259 (Ct. App. 1996).

Although Dr. Desch's deposition containing the reading of the excerpts was presented to the jury, the articles or excerpts themselves were not given to the jury. The several paragraphs of largely statistical information read aloud from the articles, which comprise roughly three pages out of a ninety-plus page deposition, constitute little more than a footnote to the extensive testimony regarding the nature and extent of Broadhead's injuries presented by both parties through medical and vocational experts who had evaluated Broadhead. *See Jones v. Dane County*, 195 Wis. 2d 892, 937–38, 537 N.W.2d 74, 89 (Ct. App. 1995) (learned treatise evidence improperly admitted that is cumulative and not given to the jury is not prejudicial error). Thus, we conclude that it is not reasonably probable that the verdict would have been more favorable to State Farm absent the admission of the journal excerpts.

*(c) Entitlement to Double Costs under § 807.01(3), STATS.*

Whether costs may be added to the verdict for the purpose of determining if a statutory offer of settlement has been exceeded by the judgment requires an interpretation of § 807.01(3), STATS. This presents a question of law which we review de novo. *American Motorists Ins. Co. v. R&S Meats, Inc.,* 190 Wis. 2d 196, 213, 526 N.W.2d 791, 798 (Ct. App. 1994).

Under § 807.01(3), STATS., when a plaintiff serves an offer of settlement which is not accepted by the defendant, the plaintiff is entitled to recover double the amount of taxable costs, *if* the plaintiff recovers "a more favorable judgment." Broadhead claims that the judgment for $42,140.97 (consisting of the $38,116.25 damages verdict, plus $3,536 in taxable costs under § 814.04, STATS., and $488.72 of post-verdict interest) was more favorable than its offer to settle for "$42,000, with costs." Broadhead, relying on certain language in *American Motorists,* 190 Wis. 2d at 214–15, 526 N.W.2d 791 at 798, claims the trial court erred in concluding that costs are not to be added to the verdict for purposes of determining whether the statutory offer of settlement has been exceeded by the judgment. Broadhead acknowledges that our holding in *Northridge Co. v. W.R. Grace & Co.,* 205 Wis. 2d 267, 556 N.W.2d 345 (Ct. App. 1996) is contrary to her position, but she urges us to determine which "conflicting" decision is correct. *See State v. Kuehl,* 199 Wis. 2d 143, 149, 545 N.W.2d 840, 842 (Ct. App. 1995) (when decisions of court of appeals are in conflict we are "free to follow the decision which we conclude is correct").

*American Motorists* and *Northridge* are not in conflict. We expressly distinguished *American Motorists* in *Northridge,* noting that the former case addressed only

the "question of whether interest awarded under § 807.01(4), STATS., is allowed on double costs awarded pursuant to § 807.01(3)." *Northridge,* 205 Wis. 2d at 289, 556 N.W.2d at 354. The precise question now before us was addressed in *Northridge,* with the following result: "we conclude that . . . under § 807.01(3), STATS., the offer and the judgment must be compared exclusive of any costs." *Id.* at 290, 556 N.W.2d at 355. Our prior holding binds us here, *Cook v. Cook,* 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997), and we conclude the trial court correctly denied Broadhead's request for double costs.

## CONCLUSION

The trial court properly exercised its discretion in denying State Farm's request to allow former juror Nolan to testify, and in refusing to grant a mistrial so that his testimony could be presented to a new jury. The admission of excerpts from medical journals without proper foundation was error, but it did not affect State Farm's substantial rights. Finally, we conclude that Broadhead was not entitled to double costs under § 807.01(3), STATS. Accordingly, we affirm the judgment.

*By the Court.*—Judgment affirmed.