Mark ANSANI, Plaintiff-Respondent,

v.

CASCADE MOUNTAIN, INC. and American Home
Assurance Company, Defendants-Appellants.†

Court of Appeals

*No. 97–3514. Submitted on briefs July 2, 1998.—Decided
November 5, 1998.*

(Also reported in 588 N.W.2d 321.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Thomas Terwilliger* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John L. Cates* and *Eric J. Haag* of *Gingras & Cates, S.C.* of Madison.

Before Vergeront, Roggensack and Deininger, JJ.

ROGGENSACK, J. Cascade Mountain, Inc. and its insurer (Cascade) appeal from a judgment finding Cascade 100% causally negligent in comparison with a skier, Mark Ansani, for injuries he sustained when he fell and slid into a timing box on Cascade's coin-operated race course. Cascade contends that the circuit court erroneously exercised its discretion by refusing to instruct the jury that under Wisconsin's recreational activity statute, § 895.525, STATS., 1991–92,[1] Ansani was negligent as a matter of law simply because he skied. Cascade also contends the circuit court erroneously exercised its discretion by making several erroneous evidentiary rulings. We conclude that the circuit court correctly interpreted subsecs. (3) and (4) of § 895.525 to impose liability on a recreational activity participant when he fails to use ordinary care, including violating the conditions enumerated in subsec. (4), and that the circuit court properly applied the Wisconsin rules of evidence to a logical interpretation of the facts. Therefore, we affirm.

## BACKGROUND

In 1993, Mark Ansani and three friends, Matt Shelley, Darius Narbutis, and Tony Arends, traveled to Cascade for a three-day ski vacation. On February 15, 1993, Ansani and his companions arrived at Cascade around 9:30 a.m. After skiing a number of runs, Ansani skied Cascade's coin-operated race course. At about 11:00 a.m., Ansani and Arends went into the ski chalet

---

[1] Because Ansani was injured February 15, 1993, the 1991–92 statutes was the then current edition. The 1995–96 version of the statute has had "death" added to the appreciation of risk set out in subsec. (3), but is unchanged in other material respects. Unless otherwise noted, all references are to the 1991–92 statutes.

where Ansani drank two alcoholic beverages with his lunch. After lunch, Ansani and Narbutis decided to race on the coin-operated course. As Ansani made the last turn on the course, he fell and slid into the timing box at the finish line. The impact ruptured his jejunum.

Ansani sued Cascade and its insurer for money damages for his injuries. At the July, 1997 trial before a twelve-person Columbia County jury, Ansani and his friends testified that the timing box was not protected by hay bales, padding or fencing. Witnesses for Cascade, however, testified that the box was always protected by fencing. The jury found that Cascade was 100% causally negligent. Cascade's motions after verdict were denied, and this appeal followed.

## DISCUSSION

**Standard of Review.**

■

Construction of a statute, or its application to undisputed facts, is a question of law, which we review *de novo*, without deference to the circuit court's determination. *State v. Keith*, 216 Wis. 2d 61, 68, 573 N.W.2d 888, 892 (Ct. App. 1997).

■

The acceptance or rejection of a requested jury instruction and the admission or exclusion of evidence lie within the sound discretion of the circuit court. *Strait v. Crary*, 173 Wis. 2d 377, 382, 496 N.W.2d 634, 636 (Ct. App. 1992); *Keith*, 216 Wis. 2d at 68, 573 N.W.2d at 892. When we review a discretionary decision, we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could

45

reach. *Keith*, 216 Wis. 2d at 69, 573 N.W.2d at 892–93. In considering whether the proper legal standard was applied, however, no deference is due. This court's function is to correct legal errors. *Id.* at 69, 573 N.W.2d at 893. Therefore, we review *de novo* whether the evidence before the circuit court was legally sufficient to support its rulings. *Id.* Furthermore, if evidence has been erroneously admitted or excluded, we will independently determine whether that error was harmless or prejudicial. *Id.*

## Jury Instructions.

The circuit court instructed[2] the jury on the duty of ordinary care, including the duties of a recreational participant pursuant to § 895.525, STATS. The relevant subsecs., (3) and (4), stated:

> (3) APPRECIATION OF RISK. A participant in a recreational activity engaged in on premises owned or leased by a person who offers facilities to the general public for participation in recreational activities accepts the risks inherent in the recreational activity of which the ordinary prudent person is or should be aware. In a negligence action for

---

[2] The court instructed:

Mark Ansani had a duty to use ordinary care for his own safety and protection and to observe the immediate surroundings and all other conditions surrounding him and the dangers, if any, which were open and obvious to him . . . .

You are instructed that a participant in a recreational activity is responsible to do all of the following: One, act within the limits of his ability; two, heed all warnings regarding participation in the recreational activity; three, maintain control of his person and the equipment the person is using while participating in the recreational activity; and four, refrain from acting in any manner that may cause or contribute to the injury to himself or other persons while participating in the recreational activity.

recovery of damages for personal injury or property damage, conduct by a participant who accepts the risks under this subsection is contributory negligence, to which the comparative negligence provisions of s. 895.045 shall apply.

(4) RESPONSIBILITIES OF PARTICIPANTS. (a) A participant in a recreational activity engaged in on premises owned or leased by a person who offers facilities to the general public for participation in recreational activities is responsible to do all of the following:

1. Act within the limits of his or her ability.

2. Heed all warnings regarding participation in the recreational activity.

3. Maintain control of his or her person and the equipment, devices or animals the person is using while participating in the recreational activity.

4. Refrain from acting in any manner that may cause or contribute to injury to himself or herself or to other persons while participating in the recreational activity.

(b) A violation of this subsection constitutes negligence. The comparative negligence provisions of s. 895.045 apply to negligence under this subsection.

Cascade argues that the court erred in instructing the jury that Ansani was negligent if he did not exercise ordinary care, including complying with the four conditions enumerated in § 895.525(4), STATS., instead of instructing the jury that Ansani was negligent as a matter of law solely for choosing to ski. Cascade contends that under § 895.525(3) a person who "accepts the risks inherent in the recreational activity of which the ordinary prudent person is or should be aware"

(which it contends included colliding with an object Cascade placed on the ski slope) is contributorily negligent as a matter of law.

The circuit court has wide discretion in fashioning jury instructions. *State v. Lenarchick*, 74 Wis. 2d 425, 455, 247 N.W.2d 80, 96 (1976). However, here, formulating an appropriate jury instruction required interpretation of § 895.525, STATS. When we review the application of statutes whose meanings are in dispute, our efforts are directed at determining the legislative intent which underlies the statute. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997).

The supreme court has already interpreted § 895.525, STATS., and determined that the duties imposed on a user of recreational property are no greater than those which existed at common law. *Rockweit v. Senecal*, 197 Wis. 2d 409, 417–18, 541 N.W.2d 742, 746 (1995). A person has a common law duty of care when it is foreseeable that his acts or omissions may cause harm. A person is negligent when he acts in a way that will cause harm that is foreseeable. *Id.* at 420, 541 N.W.2d at 747 (quoting *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 532, 464 N.W.2d 667, 672 (1991) (further citations omitted)).

Here, Ansani claims he was injured because Cascade failed to provide protective padding for a fixed object near the bottom of its race course. Cascade maintains Ansani was negligent as a matter of law because such objects are "risks inherent in the recreational activity" of which Ansani was aware when he chose to ski. However, because *Rockweit* decided that § 895.525, STATS., did not change the common law, and because

Cascade has cited no Wisconsin common law holding a skier negligent simply because he chooses to ski, regardless of the acts or omissions of the owner of the recreational property, we conclude that § 895.525(3) does not require us to hold that all who ski are negligent under all circumstances, as a matter of law.[3]

Additionally, if a skier were negligent simply because he skied, then the four conditions enumerated in § 895.525(4), STATS., would be superfluous. A common sense interpretation of statutes precludes a construction which renders one subsection superfluous. And, a common sense interpretation of statutes is favored. *See State v. Clausen*, 105 Wis. 2d 231, 246, 313 N.W.2d 819, 826 (1982). The circuit court applied a common sense interpretation to § 895.525 and concluded that subsecs. (3) and (4) when read together imposed an obligation on Ansani to exercise ordinary care to avoid foreseeable harms, including adherence to the four enumerated conditions stated in subsec. (4). We agree with the circuit court's interpretation. Therefore, we conclude the circuit court appropriately exercised its discretion in refusing to instruct the jury that Ansani was negligent *per se*, simply because he skied.

## Learned Treatises.

Cascade also contends the circuit court erred in permitting cross-examination of their expert, Pat Field, through the use of an article by Mack Mitchell (the Article) included in the JOURNAL OF STUDIES ON

[3] Under facts different from those presented here, the instruction Cascade requested could conceivably be appropriate.

ALCOHOL and from a textbook by Goodman and Gilman (the Textbook) without laying the foundation required by § 908.03(18), STATS.

■

Section 908.03(18), STATS., addresses the learned treatise exception to the hearsay rule. It states in relevant part:

> A published treatise, periodical or pamphlet on a subject of history, science or art is admissible as tending to prove the truth of a matter stated therein if the judge takes judicial notice, or a witness expert in the subject testifies, that the writer of the statement in the treatise, periodical or pamphlet is recognized in the writer's profession or calling as an expert in the subject.
> (a) No published treatise, periodical or pamphlet constituting a reliable authority on a subject of history, science or art may be received in evidence, except for impeachment on cross-examination, unless the party proposing to offer such document in evidence serves notice in writing upon opposing counsel at least 40 days before trial.

Thus, § 908.03(18) allows the use of learned treatises in cross-examination, if a proper foundation is established, even though a forty-day notice has not been provided. *Lewandowski v. Preferred Risk Mut. Ins. Co.*, 33 Wis. 2d 69, 76, 146 N.W.2d 505, 509 (1966). In addition, a party seeking to impeach a witness with a learned treatise must establish the authority of the author of the treatise, not just the authority of the treatise, generally. *Brodhead v. State Farm Mut. Auto. Ins. Co.*, 217 Wis. 2d 231, 247, 579 N.W.2d 761, 766–67 (Ct. App. 1998).

■ Field testified that Goodman and Gilman were the authors of a text that is widely used to train physicians in pharmacology. However, she did not know Mitchell, the author of the Article, or have any opinion about his professional competence. Despite Field's failure to acknowledge Mitchell's authority in the field, the circuit court allowed cross-examination on the Article because the journal in which it had appeared was widely recognized and from that the court assumed the Article was reliable. However, § 908.03(18), STATS., specifically requires that the *writer* of a treatise or an article be recognized as an expert in the field. The status of the publication itself is not sufficient to establish that the writer of an article included therein is reliable. *Lewandowski*, 33 Wis. 2d at 76, 146 N.W.2d at 509. Therefore, Ansani failed to establish the necessary foundation demonstrating the Article's reliability, and the circuit court erred in permitting cross-examination based on the Article.

■ However, that does not end our inquiry because we must determine whether the circuit court's error was prejudicial. Pursuant to § 901.03(1), STATS., "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Learned treatise evidence improperly admitted does not affect a substantial right of the party, if the evidence is cumulative and the treatise was not given to the jury. *Jones v. Dane County*, 195 Wis. 2d 892, 937–38, 537 N.W.2d 74, 89 (1995). Here, Field read portions of the Article to the jury; however, the Article, itself, was not given to the jury. Furthermore, the evidence elicited in Field's cross-examination was cumulative because it pertained to alcohol-induced

impairment, a subject on which witnesses for both sides testified in detail. Therefore, we conclude Cascade was not prejudiced by the circuit court's error.

## Prior Consistent Statements.

Cascade alleges that the circuit court erroneously exercised its discretion in permitting Katherine Ansani, Ansani's mother, to testify to an out of court statement made to her by Narbutis that there was no fence or other protection around the timing box. Ansani contends that Narbutis's statement to his mother was a § 908.01(4)(a)2., STATS., exception to the hearsay rules. Section 908.01(4)(a)2., states in relevant part:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Under § 908.01(4)(a)2., STATS., a prior consistent statement of a witness is not hearsay and may be offered for substantive purposes if: (1) the declarant testifies at trial and is subject to cross-examination concerning the statement; (2) the statement is consistent with the declarant's testimony; and (3) the statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *See State v. Mainiero*, 189 Wis. 2d 80, 101, 525 N.W.2d 304, 312 (Ct. App. 1994).

The declarant, Narbutis, testified at trial; he was subject to cross-examination concerning the statement;

and his earlier statement was consistent with his trial testimony. Therefore, the only remaining issue is whether testimony regarding Narbutis's statement to Mrs. Ansani was offered to rebut an express or implied charge against Narbutis of recent fabrication.

■

To use prior consistent statements, the proponent of the statements must show that they predated the alleged recent fabrication and that there was an express or implied charge of fabrication at trial. *State v. Peters*, 166 Wis. 2d 168, 177, 479 N.W.2d 198, 201 (Ct. App. 1991); *State v. Mares*, 149 Wis. 2d 519, 527, 439 N.W.2d 146, 149 (Ct. App. 1989). If the prior consistent statements predate the alleged recent fabrication, then the statements have probative value and are admissible. *Peters*, 166 Wis. 2d at 177, 479 N.W.2d at 201. In addition, a suggestion of recent fabrication must be made at trial. For example, in *Mares*, a sexual assault victim was asked questions on both cross-examination and recross-examination which suggested that the victim had been coached by the prosecutor about explaining the differences between her preliminary hearing testimony and her trial testimony. *Mares*, 149 Wis. 2d at 527, 439 N.W.2d at 149. We concluded that this line of questioning raised the spectre of improper prosecutorial coaching and suggested that the victim was fabricating her testimony at trial. *Id.* at 528–29, 439 N.W.2d at 149.

■

Here, Cascade cross-examined Narbutis and Ansani's other friends at length about whether they saw a fence around the timing box on the date of the accident. Through the questions asked in cross-examining Ansani's friends about the fence, as well as those related to their drinking, smoking marijuana and the

nature of the weekend in general, Cascade suggested that all of Ansani's friends had collaborated on their testimony for trial in order to support Ansani. However, Mrs. Ansani testified that Narbutis told her about the lack of a fence at the hospital, on the day of the accident. This would have preceded the alleged fabrication by Ansani and his friends, including Narbutis, which would have had to have taken place sometime later, when Ansani and his friends were together again. Therefore, Narbutis's statement had probative value and was properly admitted under § 908.01(4)(a)2., STATS., to rebut the charge of recent fabrication.

**Timing Box Photo.**

Cascade alleges that the circuit court erred in admitting into evidence and permitting the use of a photograph of the timing box without any foundation establishing when the photo was taken. The admission of evidence is a discretionary decision of the circuit court. *Peters*, 166 Wis. 2d at 175, 479 N.W.2d at 200. We will affirm a discretionary decision which applies the correct law to a reasonable view of the facts. *Mares*, 149 Wis. 2d at 525, 439 N.W.2d at 148.

After cross-examining Doug Peters, a ski patrol member, about whether the timing box at Cascade typically had a fence around it, Ansani's lawyer proceeded to show Peters the photo. Cascade objected. The court sustained the objection and the photo was not shown to the jury at that time. However, Ansani's lawyer then questioned Peters about the photo, and Peters described the photo in detail. Following that line of questioning, the photo was shown to the jury. Finally, Ansani's lawyer asked Peters, "So would you agree by

looking at this photograph that sometimes snow fences aren't placed around this clock?" Cascade objected again arguing that Ansani had not laid the proper foundation to establish when the photo was taken.

There was no testimony or argument that the photo was taken on the day of the accident. Instead, the photo was used only to prove that a fence was not "always" around the timing box, as Cascade asserted, not that it wasn't around the timing box on the day of the accident. The timing of the photo was not relevant to the testimony that Ansani sought to impeach. Therefore, we conclude the photo was properly admitted into evidence even though Ansani's lawyer did not establish when the photo was taken.

**Subsequent Remedial Measures.**

Cascade argues that cross-examination of its various witnesses with respect to the manner or method by which the timing box was protected in seasons subsequent to the 1992/1993 ski season violated the prohibition against evidence of subsequent remedial measures under § 904.07, STATS. We disagree.

Section 904.07, STATS., states in relevant part:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

However, § 904.07, STATS., contains an exception to this general rule:

This section does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as . . . impeachment.

Based on this impeachment exception, a circuit court should restrict cross-examination when the thrust of the questioning is to admit evidence of post-event remedial measures to show that the defendant was negligent, but not when it is used for impeachment purposes. *D.L. Friederichs v. Huebner*, 110 Wis. 2d 581, 608, 329 N.W.2d 890, 902 (1983). If this impeachment exception were construed too broadly, any time a defendant controverted an allegation of negligence, a plaintiff could bring in evidence of subsequent remedial measures to prove prior negligence or culpable conduct under the guise of impeachment. *Id.* at 602, 329 N.W.2d at 899. However, evidence of subsequent measures is properly admitted under narrow circumstances such as to impeach a witness in regard to a specific fact to which the witness has testified. *Id.*

Cascade put on several witnesses to testify that there was a fence around the timing box on the day of the accident; however, most of the witnesses testified that they did not specifically recall seeing the fence on that particular day. Instead, the witnesses' testimony was based on their recollections that the fence was "always" up and that it was the typical practice of Cascade to have a fence around the timing box. Ansani cross-examined these witnesses concerning the manner and method by which the timing box was protected in seasons subsequent to the 1992/1993 season. This testimony was elicited to impeach the credibility of Cascade's witnesses who testified that the fence was always up, when there was evidence to the contrary.

Therefore, the testimony was properly admitted because the thrust of the questioning concerning the post–1992/1993 fencing practices was to reflect on the witnesses' testimony, not to show that Cascade was negligent.

## Placement of the Last Gate.

Cascade argues that because Narbutis was not identified or qualified as an expert witness, the circuit court erroneously permitted Narbutis to testify on redirect examination that the last gate on Cascade's race course was not set up in the same way as the last gates at a course in Alta, Utah, and at other courses. We disagree.

Narbutis was unquestionably a lay witness not an expert witness. Opinion testimony by lay witnesses is limited pursuant to § 907.01, STATS., which states:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Narbutis's testimony was based on his own perception of the placement of the gate on the date of the accident. His testimony that the gate placement was different from the gate placement on other race courses was helpful to a clear understanding of why he remembered the placement of the last gate. Furthermore, this testimony was elicited on redirect solely to lend credibility to Narbutis's memory on how the last gate on the Cascade course was set up on the date that

Ansani was injured. It was not presented as an expert's opinion that the gate was set up incorrectly. The testimony was relevant to Narbutis's credibility, and it did not unfairly prejudice Cascade or confuse or mislead the jury because Narbutis merely testified that the placement of the last gate at Cascade was unique, not that it was dangerous.

## FIS Rules.

Cascade contends that the circuit court erroneously exercised its discretion when it admitted portions of the International Ski Federation rule book (FIS Standards) into evidence and allowed Alan Kildow, Ansani's expert witness, to testify that in his opinion the FIS Standards set the standard of care for coin-operated race courses. We disagree.

Testimony by experts and the appropriate bases for an expert's opinion are governed by §§ 907.02 and 907.03, STATS. Section 907.02 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The expert may base his or her opinion on facts or data "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Section 907.03.

Cascade does not contend that Kildow was not properly qualified as an expert or that the proper foundation was not laid to establish that the FIS Standards are relied upon by ski experts. Rather, Cascade argues that the evidence concerning the FIS Standards unfairly prejudiced Cascade because although the FIS Standards establish safety standards that apply to skiing, Cascade is not bound by these standards. We find this argument unpersuasive because Kildow never tes-

tified that Cascade was required to meet the FIS Standards or that they are subject to sanctions for failure to comply with them. Furthermore, Cascade's expert agreed that the safety principles underlying the FIS Standards apply to all levels of skiing and ski racing. Therefore, Cascade failed to demonstrate that the probative value of the evidence concerning the FIS Standards was substantially outweighed by the danger of unfair prejudice. Section 904.03, STATS.

## CONCLUSION

The circuit court properly instructed the jury that Ansani was obligated to comply with all four conditions enumerated in § 895.525(4), STATS., and that he had a duty of ordinary care to avoid foreseeable harms, rather than instructing it that Ansani was negligent as a matter of law solely because he skied. Furthermore, in making its various evidentiary rulings, the circuit court applied the proper legal standard to a logical interpretation of the facts, and any error which occurred in the cross-examination of Dr. Field was harmless error. Therefore, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.